180 So.2d 269

**CALVERT FIRE INSURANCE COMPANY**

v.

**W. G. GREEN.**

**4 Div. 233.**

Supreme Court of Alabama.

Nov. 18, 1965.

Preston C. Clayton, Eufaula, for appellant.

Jere L. Beasley, Clayton, for appellee.

MERRILL, Justice.

This is an appeal by Calvert Fire Insurance Company from a judgment of $1,800 rendered against it in favor of W. G. Green, the owner of a hay baler which was damaged by collision on September 1, 1964, and which had been insured by appellant against direct physical loss or damage. The policy was issued to Commercial Credit Equipment Corporation, which financed the purchase of the hay baler by Green from Beaty Motor Company, but the policy covered the interest of the finance company and the purchaser. A motion for new trial was overruled.

Appellee's complaint, filed September 29, 1965, consisted of two counts. Count Two charged breach of contract in failing to pay the damage to the hay bailer, but on the day of the trial, Count Two was dismissed by appellee because he had been paid the damages due under the policy on the same day suit was filed. The cause was submitted to the jury on Count One.

Count One sought damages based upon the negligence of appellant in the adjustment of appellee's claim under the policy of insurance. Appellee alleged that his hay baler was damaged in a collision on September 1, 1964, that appellant was notified of the loss on September 2, 3, 9 and 14, that "he was led to believe by Defendant that his claim would be adjusted immediately due to the nature of the loss," that appellant "negligently failed to take action and adjust the property loss caused to said Hay Baler by collision within a reasonable time," that as a proximate consequence of this negligence, he lost a considerable amount of peanut hay which was ruined and destroyed by heavy rainfall on September 10 and 13, 1964.

This case is one of first impression in Alabama, and presents the question of whether an insurer of personal property against loss or damage by upset or collision is liable to the insured for failure to adjust and pay a claim within a period of less than thirty days.

The documentary evidence shows that the loss occurred on September 1, was reported September 3, and received by the adjuster

for appellant on September 9. There is evidence that he had some thirty other claims to settle, that he may have mislaid the claim in the instant case, and that he devoted seven hours to the adjusting and settlement of it on September 29, 1964. The channel of notification went from the owner-insured to the dealer to Commercial Credit Corporation to appellant, and there was no direct communication between the owner and appellant until September 29.

The hay baler was damaged as it was being towed along a road and the right side of the baler collided with a parked truck on the side of the road. The dealer "patched it up" once or twice so that it would bale hay but did not repair it completely because he had not been authorized by the insurer to repair it. The dealer told the man he reported to at Commercial Credit Corporation that the situation was an emergency because the insured had hay lying in the field.

Pertinent provisions of the policy which was introduced in evidence are:

*"CONDITIONS*

"4. Valuation. Unless otherwise provided in form attached, this Company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

"5. Settlement of Claims. All adjusted claims shall be paid or made good to the Assured within sixty (60) days after presentation and acceptance of satisfactory proof of interest and loss at the office of this Company. No loss shall be paid hereunder if the Assured has collected same from others.

"16. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

\* \* \* \* \* \*

"2. INTEREST AND PROPERTY INSURED:

This policy covers the following interests and property:

(a) The interest of the Assured and the interests of purchasers in property consisting principally of far(m) implements and machinery in which the Assured has a financial interest through retail installment sales contracts owned by the Assured during the term of the policy, \* \* \*

"3. ATTACHMENT AND TERMINATION OF RISK:

This insurance attaches with respect to the property described in Sub-paragraph (a) of Paragraph 2 above from the time such property is sold to a purchaser having executed a retail installment sales contract that is purchased by Assured until termination of the Assured's financial interest therein, \* \* \*

\* \* \* \* \* \*

"5. PERILS INSURED:

This policy insures against all risks of direct physical loss or damage to the insured property from any external cause except as hereinafter excluded.

"6. PERILS EXCLUDED:

This policy does not insure against:

(a) Loss or damage caused by or resulting from delay, loss of market, loss of use, * * * rain, * * *.

* * * * * *

"8. VALUATION:

The Company shall not be liable for more than the actual cash value of the property at the time any loss or damage occurs, * * * and in no event for more than what it would then cost the Assured or dealer to repair or replace the same with material of like kind and quality, * * *.

* * * * * *

"14. PAYMENT OF LOSS:

Loss, if any, payable to Assured or order. All adjusted claims shall be paid or made good within sixty (60) days after presentation and acceptance of satisfactory proofs of interest and loss at the office of the Company. * * *."

Some states impose upon an insurance company, as a condition of doing business within the state, the obligation to pay damages and attorney's fees in case of default or vexatious delays in payment of their policies. 3 Appleman, Insurance Law and Practice, §§ 1601–1605. But Alabama has no such statute.

In 6 Appleman, Insurance Law and Practice, § 4031, it is stated: "It has been held that, in the absence of statutes, the insured cannot recover damages beyond legal interest because of the insurer's delay or refusal to pay the amount of a loss. And even where the insurer's action was wilful, such as refusing to pay a loss in order to take advantage of the insured's need for ready money wherewith to re-establish his business, it did not constitute a tort so as to entitle the insured to damages beyond interest." Cited in support of these statements are New Orleans Insurance Co. v. Piaggio, 83 U.S. 378, 16 Wall. 378, 21 L.Ed. 358, and Baumgarten v. Alliance Assur-

ance Co., C.C.Cal., 159 F. 275. The Piaggio case has been cited many times for the principle that a claim for damages for the mere nonpayment of money due under a contract, above or in addition to interest, cannot be recovered.

In De Rossett Hat Co. v. London Lancashire Fire Ins. Co., 134 Tenn. 199, 183 S.W. 720, it was held that where the policies did not require payment until sixty days after furnishing proof of loss, a statement agreed to by the adjuster of the insurers that the claim would be paid in not more than five days at utmost, did not entitle insured to immediate payment, or furnish a basis for recovery of the statutory penalty.

In 6 Appleman, Insurance Law and Practice, § 4037, it is said: "The insured's right to a penalty * * * does not attach until the loss becomes payable under the terms of the policy."

Sections 5 and 14 of the policy in the instant case provided for payment within sixty days after receipt of proof of interest and loss. Here, the entire matter was adjusted and paid on the 28th day after the collision and on the 26th day after the notice of loss. The defendant did all that it promised to do within less than half the time it pledged itself to compensate for a loss by the terms of the policy.

Also, Section 6 of the policy specifically provided that the policy did not insure against loss or damage caused by or resulting from delay, loss of market or rain.

We cannot defeat the express terms of a policy of insurance by judicial interpretation; we must enforce the contract as it is written, and not attempt to make a new contract for the parties. General Motors Acceptance Corp. v. Kendrick, 274 Ala. 566, 150 So.2d 185, and cases there cited.

Here, the policy covered damage to the hay baler. The insurer paid that damage under the terms of the policy and prior to the time limit set by the policy.

There is no escape from the fact that the appellant insurer did exactly what it was required by the policy to do, and paid the claim within less time than it was obligated to pay it. And under Section 8 of the policy, the insurer would have been liable for the earlier repair or replacement by the dealer, had the insured authorized the dealer to go ahead with the repairs. This he did not do.

Georgia is one of the states which has a statute imposing a penalty on insurance companies for not paying claims within a reasonable time. In Leonard v. Fireman's Insurance Co. of Newark, N. J., 100 Ga.App. 434, 111 S.E.2d 773, the court held that damages sought to be recovered were in the nature of a penalty since the plaintiff claimed damages because of the insurer's failure to settle his claim promptly. It said that a suit under the statute, Code, § 56–706, was the exclusive remedy; and it held that the "Mere breach of a contract cannot be converted into a tort by showing that failure to perform upon the part of the one committing the breach had resulted in great inconvenience, trouble, annoyance, and hardship to the other party to the contract."

Appellee cites us one sentence from Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524 [18, 19]: "A failure to exercise ordinary diligence proximately causing damage to the insured is actionable in tort." But that sentence and that case had to do with liability insurance, where the insurer could have settled, and was requested by the insured to do so, a claim for damages within the limits of the policy. Here, the coverage is for property loss or damage. The distinction is recognized by the Georgia Court in the Leonard case, cited supra, where the court said:

"* * * As to liability insurance, the company owes to the insured a duty independent of the contract not to injure him, and when, from its negligent failure or refusal to adjust a claim, or from fraud or other bad faith, he sustains damages other than damages covered by the insurance contract, then an action in tort would be appropriate. The contract here was to pay a loss covered under the policy. The insured is damaged by the failure to pay only in the sense that any creditor is damaged by the debtor's failure to pay a matured debt, but for this an action in tort will not lie since the remedy is on the contract. Its liability under Coverage E of the policy is to pay the amount of the loss in excess of the deductible amount. * * *"

■■ It is elementary that where there is no duty, there can be no negligence. Gilbert v. Gwin-McCollum Funeral Home, Inc., 268 Ala. 372, 106 So.2d 646, and cases there cited. Also, there can be no actionable negligence without breach of a legal duty. Alabama Great Southern R. Co. v. Green, 276 Ala. 120, 159 So.2d 823.

■ In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and (3) An injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these renders a complaint bad or the evidence insufficient. Malone Freight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274; Stokely-Van Camp, Inc. v. Ferguson, 271 Ala. 120, 122 So.2d 356; Tennessee Coal, Iron & R. Co. v. Smith, 171 Ala. 251, 55 So. 170.

Here, the evidence was insufficient to show either a duty owed by the insurer to speedily adjust the claim, or a breach of the duty it had contracted to perform. Every pertinent provision of the policy was performed by the insurer, and the full monetary coverage provided by the policy

was paid in less than half the time allowed the insurer to pay.

There was no evidence to support the allegation in the complaint that the insured "was led to believe by Defendant that his claim would be adjusted immediately."

It follows that, under the authorities cited supra, the trial court erred in refusing to give the affirmative charge requested by the appellant, and also erred in refusing to grant the motion for a new trial. Each of these refusals was assigned as error and argued in brief.

We have not considered the question of whether Count One of the complaint stated a cause of action. Appellant filed a demurrer which was overruled, but no argument in brief raises this ruling of the court for our consideration.

Reversed and remanded.

LIVINGSTON, C. J., SIMPSON and HARWOOD, JJ., concur.