This case involves an action by one attorney, Wilson, against another attorney, Brooks, and Brooks' law firm. Summary judgment was granted for the defendants. We affirm.
Several theories of recovery are advanced by Wilson which he contends should entitle him to a reversal of the summary judgment and a trial on the merits. We have carefully analyzed each of his alleged causes of action and consider it necessary to discuss only two of them, malicious prosecution and abuse of process. During oral argument, Wilson's counsel conceded that the complaint did not allege tortious interference with a contractual relationship.
It is generally considered that the following elements must be shown in order to *Page 1222 
maintain an action for malicious prosecution:
 "`(1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of the action or prosecution complained of.'"
Turner v. J. Blach Sons, 242 Ala. 127, 129, 5 So.2d 93, 94
(1941).
The chief distinction between abuse of process and malicious prosecution is that the former rests upon the improper use of a regularly issued process, whereas the latter has to do with the wrong in the issuance of the process or in causing the process to be issued. Clikos v. Long, 231 Ala. 424, 165 So. 394 (1936);Dickerson v. Schwabacher, 177 Ala. 371, 58 So. 986 (1912).
The facts out of which this controversy arose are somewhat complicated because two other lawsuits are involved.[1] The first case was in Federal District Court for the Southern District of Alabama in Mobile. The parties and their respective attorneys were: Indian Towing Company, represented by Mr. Samuel Exnicios, New Orleans, Louisiana and Mr. James Brooks, of Mobile, Alabama; Lumber Company of America, Inc., represented by Albert Sidney Johnston of Mississippi and William Roberts Wilson, Jr. of Mobile, Alabama; Mr. Don Durant, represented by Mr. Samuel Exnicios of New Orleans, Louisiana and Mr. James Brooks of Mobile, Alabama, and two other individuals, Martin Bender and David Reppuhn. (The record does not reveal who represented Bender and Reppuhn, and for our purposes, it is immaterial).
The record indicates generally that Mr. Don Durant owned substantial, if not controlling interests in both Indian Towing Company and the Lumber Company of America, Inc. and these two entities were represented by different counsel so as to preserve their separate rights and interests. Captain Andre Van Oosten was an officer of both Indian Towing Company and Lumber Company of America and acting in that capacity, Captain Van Oosten retained Albert Sidney Johnston of Mississippi to represent the Lumber Company of America.
Insofar as we can ascertain, Mr. Durant (or Lumber Company of America) either owned or claimed title to certain lumber which had been shipped from South America to New Orleans, Louisiana, and ultimately to Mobile, Alabama. It appears that Reppuhn and Bender also asserted a claim to this lumber and Indian Towing Company presented their claim for transportation of the lumber. During the trial of this case, Mr. Durant, acting on behalf of Lumber Company of America settled the case for approximately $250,000.[2]
The second lawsuit involved an action in the Mobile Circuit Court by Albert Sidney Johnston and William Roberts Wilson against Don Durant and Lumber Company of America. Johnston and Wilson sought payment for their services in the federal litigation, however, Durant not only denied their claim, but he also filed a $300,000 malpractice counterclaim against Johnston and Wilson. This counterclaim (dismissed with prejudice pursuant to a settlement agreement wherein Johnston and Wilson reduced their fee demands) was based on an affidavit by James Brooks, the attorney for Indian Towing Company and Don Durant in *Page 1223 
the federal litigation. In Brooks' affidavit, he stated that
 "the attorneys for the Lumber Company of America, Inc., whether Albert Sidney Johnston III, individually, or in concert with William Robert Wilson, Jr., did not meet the standard which might reasonably be expected of a practicing member of Mobile Bar, in the defense of this case, in that they did not properly prepare the case, were not familiar with the depositions, failed to examine various witnesses upon taking of depositions, and failed to adequately prepare a defense or offense in the case."
Turning now to the instant case, as we construe the complaint, Wilson alleges that he was associated by Albert Sidney Johnston in a limited role to provide a mere conduit through which pleadings were filed and served, and that Brooks knew of this limited role in the federal litigation. The allegations in the complaint, viewed in light of the facts in the record appear to support the inference that Brooks not only persuaded Durant not to pay Johnston and Wilson, but also executed the affidavit to divert Durant's attention from Brooks' role in recommending the settlement of the federal suit.
Wilson contends that since Brooks knew about the pro forma
nature of Wilson's appearance in the federal case, he perverted legal processes by procuring the filing of the malpractice counterclaim against Wilson; that Brooks acted maliciously and with the ulterior motive to mislead Durant with respect to the unfavorable settlement in the federal litigation.
Portions of several affidavits and depositions tend to support Wilson's position. Mr. Samuel Exnicios, Brooks' co-counsel was deposed in New Orleans, Louisiana and a portion of his testimony follows:
Q. All right, sir. Do you know Mr. Robert Wilson, Bob Wilson?
A. Yes, sir.
Q. What was his involvement in the defense of these cases?
A. Well, Mr. Johnston, being an attorney from Mississippi, likewise needed local counsel to represent him before the service of proceedings, pleadings, etc., under the court rules in Alabama, and he was brought in for that purpose.
Q. Do you know what his duties were in relation to the defense of this suit for Lumber Company of America, Inc.?
A. Sole duties that I know of was to accept pleadings on our behalf, on behalf of, actually, Albert Sidney Johnston, and file them if we sent him anything.
Q. Was he to participate in the trial or defense of this cause?
A. Neither was he supposed to and neither did he do so. He did not participate on an active basis. He was a young lawyer. He was, at that time, there, at the time of the trial, but the litigation was quite complicated and he wasn't ever fully acquainted with it that I know of.
Q. Was he supposed to be acquainted with it?
A. He was never, to my knowledge, supposed to be acquainted with the suit in any way, shape or form. We did not discuss the suit with him. He wasn't to be taken into consideration in discussing the suit, and we never did.
* * * * * *
Upon the advice of Mr. Brooks to Mr. Durant and myself and Mr. Johnston, that the judge would not believe what Captain Van Oosten said, we told Mr. Durant that now (during the trial) is the best time to try to negotiate a settlement . . .
* * * * * *
Q. At any time during the course of the trial of that suit, did Mr. Brooks ever express to you that Mr. Wilson was incompetent and not living up to or fulfilling his duties for the purpose for which he was employed?
A. Not to my knowledge. He never expressed any such question. In fact, it would have been beyond his interest to do so because Mr. Wilson and Mr. Johnston were working together, and Mr. Brooks and *Page 1224 
myself were working together; so it was not that we were looking over what he was doing, Mr. Wilson. He was only a figure-head for the purpose of meeting the requirements of the court, the local rules of the court. That's all he was employed to do and that's all he ever did and that's all we ever expected him to do.
The deposition of Captain Andre Van Oosten is part of the record and he also testified as to Wilson's limited role in the federal case.
Q. All right, sir. Does the affidavit also set out the employment of William Roberts Wilson, Jr., sir?
A. That is referred to. I see in here — The affidavit speaks for itself, but I did, in this situation, employ Mr. Johnston to represent Lumber Company of America; and he in turn, the way I understood it, employed Mr. Wilson, William Roberts Wilson, of Mobile, to file the documents in the Mobile Court.
Q. All right, sir. Were these attorneys employed under your direction and supervision?
A. Not Mr. Wilson, but Mr. Johnston was.
Q. To your personal knowledge, what was Mr. Wilson's function?
A. All he did was file papers.
Q. Was he to participate in any way in the defense of Lumber Company of America?
A. Not that I was aware of.
Q. Was he to assist in the trial or settlement or progress of the case in any way?
A. I don't think I ever heard him open his mouth.
Q. All right, sir. Do you know the reason why it was necessary to employ Mr. Wilson?
A. I understand that Mr. Johnston could not directly go into the federal court in Mobile and needed a local attorney to introduce him, or whatever you do in those cases.
Q. All right, sir; and to your knowledge was that the only and sole purpose for the employment of Mr. Wilson?
A. That's all I understood him to be.
* * * * * *
Q. Now, do you know what the duties were of Mr. Wilson in that case?
A. Well, I said that before. He was supposed to submit paper work and that's it.
* * * * * *
Q. To your knowledge, did Mr. Wilson have anything to do with the settlement of that case?
A. No, he didn't.
Captain Van Oosten's affidavit, filed in the second suit heretofore referenced is consistent with his deposition.
 I am ANDRE VAN OOSTEN. I am sometimes employed by Indian Towing Company, Inc., a corporation which is principally owned by Don Durant. For and on behalf of Lumber Company of America, I handled the employment of ALBERT SIDNEY JOHNSTON, III to represent Lumber Company of America, a corporation in a lawsuit which was pending against it in the United States District Court for the Southern District of Alabama, Southern Division and being Civil Action No. 74-268-T, Indian Towing Company v. Lumber Company of America, etc. The agreement with William Roberts Wilson, Jr., made by ALBERT SIDNEY JOHNSTON, III, understood to be that he was not to necessarily participate in the case, but was to be paid for the use of his name on pleadings. He later billed $500.00 for this service. Mr. Wilson's only compensation was to be $500.00 for the use of his name in that Mr. Johnston, being licensed to practice law in the State of Mississippi, case being in the State of Alabama, needed to have an attorney associated with him who was licensed in the State of Alabama.
The affidavit of Albert Sidney Johnston, III, filed in this case, provides in pertinent part: *Page 1225 
 [S]ince I was not licensed to practice before the Bar of the United States District Court for the Southern District of Alabama it was necessary for me to obtain local counsel in order to file pleadings in said cause and participate therein.
 I therefore, being duly authorized to associate local counsel, hired Wm. Roberts Wilson, Jr., Plaintiff herein, to represent the interest of Lumber Company of America, Inc. in the following specifically limited and distinct capacity:
 Mr. Wilson was merely to undertake the signing of pleadings in said cause and he was further merely to sit in the courtroom during the trial of the said cause. For this, he was to charge a retainer fee of FIVE HUNDRED ($500.00) DOLLARS for signing the pleadings and handling pleadings which were to be filed through his office in Mobile, Alabama, plus time charges for mere presence in Court. Mr. Wilson did each and every one of the duties for which he was hired, fully, completely and competently.
 On the other hand, I specifically instructed Mr. Wilson not to attend depositions, not to take depositions, not to participate in the active trial of the case in any manner, he was not to undertake discovery, research, preparation or any duties other than that immediately described above, he was not to give advice, opinions, legal or otherwise, he was not to consult with the parties to the lawsuit or the attorneys, and he was not to take any active role in the lawsuit whatsoever. Mr. Wilson gave no advice to Mr. Durant or anyone else whether or not a settlement should be made in any matter, he gave no recommendations as to whether or not any settlement should be made, and he discharged all duties as specified above properly, competently, and thoroughly.
 All attorneys in the Federal Case, including James Brooks were aware of Mr. Wilson's limited capacity in the Federal Case. There was no way any of the Parties or Attorneys in the Federal case could have been unaware of Mr. Wilson's limited capacity and acts.
 I was the individual who hired Mr. Wilson. I was his only supervisor, I was lead counsel, he followed my directions and did each and every thing properly and satisfactorily that he was requested to do by me, which was limited to the signing of pleadings and attending Court sessions. (emphasis added)
As previously noted, termination of the proceeding in favor of the plaintiff is a prerequisite for successful malicious prosecution action. Turner, supra. In this regard, we consider Wilson's complaint fatally defective. It is true that the malpractice counterclaim allegedly initiated by Brooks was dismissed with prejudice, but contrary to Wilson's allegation, the dismissal of the counterclaim was part of the settlement agreement wherein Wilson, and presumably Johnston, reduced their fee demands. Thus, the termination of the previous litigation was not favorable in all respects and Wilson's malicious prosecution action will not lie.
Addressing Wilson's abuse of process claim, in the case ofTarver v. Household Finance Corp., 291 Ala. 25, 277 So.2d 330
(1973), it was established that "termination of the original suit in plaintiff's favor is not an element of a cause of action for abuse of process." We have noted that an abuse of process is the improper use of a regularly issued process but in this case, Wilson has alleged that Brooks' extra-judicial actions, informing Durant that Johnston and Wilson improperly conducted the federal litigation, actually motivated Durant to file the malpractice counterclaim in the second suit. If that be the case, then the counterclaim was not regularly and rightfully issued within the definition set out in Clikos,supra; therefore the action for abuse of process will not lie.
It appears that the trial court properly granted the defendants' motion for summary judgment and is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur.
[1] These facts have been distilled from the depositions and affidavits of Samuel Exnicios, Andre Van Oosten, Albert Sidney Johnston and Don Durant.
[2] The record indicated that Mr. Durant decided to settle the case after Mr. Brooks advised him that the Federal District Judge hearing the case would not believe the testimony of Captain Van Oosten. Mr. Exnicios testified in his deposition that Mr. Brooks had previously represented Captain Van Oosten in a case before this judge and "Mr. Brooks felt that the judge knew Captain Van Oosten and was not going to place any value on his testimony."
Captain Van Oosten, however, stated in his deposition that he had never testified before the judge presiding in that case and that the first time he had ever seen that judge was on the day of the trial. *Page 1226