On or about December 14, 1974, appellant Reynolds cashed a check at a store operated by appellee McEwen. The check was payable to cash in the amount of sixty-five dollars ($65.00), drawn on appellee First National, and was signed "M.B. Kelley."[1] Reynolds endorsed the check.
The check was drawn on an account which Kelley had closed because he had found some of his blank checks were missing. Then, Kelley opened a new account with First National. He told them to charge all the checks written on the old account to the new one but to scrutinize his signature on all of his checks to notice a *Page 704 
dash between the "M" and the "B" of his signature. Kelley told First National he would put a dash between his first two initials when he signed his checks as a precaution against forgery. If a check was received without the dash, First National was to contact him for further instructions. The signature of Kelley on the check cashed by Reynolds at McEwen's store did not contain a dash between the "M" and the "B."
As the check proceeded through the collection process, problems developed. The computer used by First National to process checks rejected the check as "no account found." The bookkeeper then had to handle the check specially. The bookkeeper used a microencoding machine and placed a little white sticker with Kelley's new account number on the check and sent it back to the computer. The computer rejected the check again, this time for insufficient funds. In the meantime Kelley made a deposit to the account. The check was charged to Kelley's new account, but because the check was old and did not contain the required dash between the "M" and the "B," Kelley was contacted by First National. The Bank's representative testified that Kelley told her not to pay the check because he did not sign the check. The check was returned to McEwen as "signature does not agree with one on file." McEwen testified he contacted Reynolds and she said "she would take care of the check." Reynolds stated that she told McEwen to contact Kelley; that her mother, who had formerly been married to Kelley had given her the check. She further testified that her mother had filled in the word "cash" and the sixty-five dollar amount, it having been previously signed by Kelley.
McEwen never received the $65.00 from Reynolds or Kelley. Approximately fourteen months after the check was returned to him, McEwen signed a sworn affidavit accusing Reynolds of forgery. Reynolds was tried on the forgery charge before a jury, which found that she was not guilty.
Thereafter, Reynolds filed a complaint alleging that First National was guilty of negligence and wantonness[2] and that McEwen was guilty of malicious prosecution.
The case came to trial on February 10, 1981. At the close of plaintiff's evidence, the court granted a motion for directed verdict in favor of First National on the issues of negligence and wantonness.
The court submitted to the jury the issue concerning the allegation against McEwen for malicious prosecution. After the court charged the jury on the malicious prosecution allegation, the following transpired:
 "MR. AUSTIN: Your Honor, we would object in that the Court did not give the charge regarding abuse of process. We submit that the evidence has been presented and gives rise to the giving of the charge of abuse of process, and in fact by Mr. McEwen's own testimony, there was an abuse of this process. The reason he instituted this criminal charge, criminal action was for the sole purpose of attempting to collect the civil debt.
 "THE COURT: Satisfied with that objection, Mr. Austin?
"MR. AUSTIN: With that exception, yes, sir.
 "THE COURT: All right, bring the Jury back in, please."
Reynolds did not request a written charge on abuse of process. The jury returned a verdict in favor of McEwen on the issue of malicious prosecution.
Appellant raises two issues on appeal: (1) Whether the trial court erred by granting First National's motion for a directed verdict and (2) whether the trial court erred in refusing to give a jury instruction for abuse of process.
Reynolds contends that actions by First National causing the check to be returned marked "signature does not agree with one on file" began the series of events which resulted in the warrant for forgery being *Page 705 
issued for her arrest. Appellant submits that her case against First National should have been decided by a jury because "the changing of an account number on a check and the returning of that check as `signature does not agree with one on file' against the new account number would foreseeably be seen to possibly cause injury to the endorser of that check by a reasonable and prudent person."
 "In every case involving actionable negligence, there are necessarily three elements essential to its existence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) A failure by the defendant to perform that duty; and (3) An injury to the plaintiff from such failure of the defendant. When these three elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these renders a complaint bad or the evidence insufficient."
Calvert Fire Insurance Co. v. Green, 278 Ala. 673, 677,180 So.2d 269 (1965).
The dispositive issue in this case is whether First National owed a duty to Reynolds. Under the facts presented here, we find that no duty was owed by First National to the plaintiff. The check was payable to "cash," allegedly signed by Kelley, and drawn on First National. Reynolds endorsed the check and presented it to McEwen at his store. McEwen accepted the check, endorsed it, and deposited the check at his bank. When First National refused to pay the check, it was returned to the last endorser, McEwen. Having lost the amount of the check, sixty-five dollars, McEwen looked to the next endorser, Reynolds, for payment. Reynolds refused. The relationship between First National and its depositor Kelley did not extend a duty to Reynolds as endorser of the check.
A bank and its depositor have a debtor-creditor relationship.Southern Hardware Supply Co. v. Lester, 166 Ala. 86,52 So. 328 (1910). In this case, the failure by the bank to pay this check concerns only the bank and its depositor. For example, if the bank had failed to honor a valid check drawn on Kelley's account, the bank would have been liable to Kelley for wrongfully dishonoring his check. See, Code 1975, § 7-4-402;Macrum v. Security Trust Savings Co., 221 Ala. 419,129 So. 74 (1930).
Under the evidence in this case, First National was obligated to handle its depositor's ordinary business transactions as directed by the depositor. First National owed no duty to Reynolds. Reynolds did not present the check for payment at the bank. It is elementary that where there is no duty there can be no breach. Calvert, 278 Ala. at 677, 180 So.2d 269.
On appeal after a directed verdict, this Court must examine the record to see if there was any evidence in support of the theory of the complaint which would render the directed verdict improper. See, Perdue v. Mitchell, 373 So.2d 650 (Ala. 1979). Because we have found no duty was owed by the bank to Reynolds, the decision of the trial court to grant First National's motion for directed verdict is affirmed.
The only allegation against McEwen in the complaint reads as follows:
 "On or about March 22, 1976, Defendant Sammy McEwen did maliciously, and without probable cause therefor, cause the Plaintiff to be arrested under a warrant issued by F.E. Lansford, Warrant Clerk, Shelby County Inferior Court, on a charge of forgery. The case was tried in the Circuit Court of Shelby County, Alabama, on January 25-26 of 1977 at which time a verdict of not guilty was rendered in favor of Plaintiff Sheila Reynolds."
Reynolds's complaint alleges a claim for malicious prosecution. It contains no claim for abuse of process. The tort of malicious prosecution and the tort of abuse of process are two distinct torts.
In order to prove malicious prosecution the following elements must be shown:
 "`[T]he institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of, *Page 706 
the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of the action or prosecution complained of' Turner v. J. Blach Sons, 242 Ala. 127, 129, 5 So.2d 93, 94 (1941)."
Wilson v. Brooks, 369 So.2d 1221, 1222 (Ala. 1979).
The essential elements of abuse of process are: (1) An ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. See, Duncan v. Kent, 370 So.2d 288, 290 (Ala. 1979); Clikos v.Long, 231 Ala. 424, 165 So.2d 394 (1936); Dickerson v.Schwabacher, 177 Ala. 371, 58 So. 986 (1912). "The chief distinction between abuse of process and malicious prosecution is that the former rests upon the improper use of a regularly issued process, whereas the latter has to do with the wrong in the issuance of the process or in causing the process to be issued." Wilson v. Brooks, 369 So.2d at 1222.
In his treatise on torts, Prosser explains the tort of abuse of process:
 "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself. . . . There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort. . . . The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive."
W. Prosser, Handbook of the Law of Torts, § 121 (4th ed. 1971).
Since plaintiff only made a claim for malicious prosecution, and not for abuse of process, it was not error for the trial court to decline to charge the jury as to the latter.
Moreover, even if abuse of process had been properly alleged and evidence had been presented to support the claim appellant did not properly preserve for review any alleged error of the trial court in refusing to give a jury instruction regarding the claim of abuse of process. Appellant's only objection at the close of the trial court's instruction to the jury was "that the Court did not give the charge regarding abuse of process." Appellant did not, however, offer a written requested charge regarding abuse of process.
The law of this state requires that an objection to the failure to charge on a particular subject (in this case, abuse of process) must be by way of a requested written charge. Cityof Birmingham v. Wright, 379 So.2d 1264, 1266 (Ala. 1980). See, ARCP 51. No prejudicial error was committed by the trial court and the judgment is affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.
[1] M.B. Kelley was originally a defendant in this suit. A summary judgment was granted in his favor on September 23, 1980. Kelley was deceased at the time of trial. There was no appeal filed as to the granting of Kelley's summary judgment.
[2] In her statement of the case on appeal Reynolds stated a claim for misrepresentation. However, only negligence and wantonness were alleged in her complaint.