428 So.2d 615 (1983)
D.L. PARKER
v.
THYSSEN MINING CONSTRUCTION, INC.
81-737.
Supreme Court of Alabama.
March 4, 1983.
*616 Stanley Jay Murphy of Murphy & Murphy and Paul E. Skidmore, Tuscaloosa, for appellant.
Robert B. Harwood, Jr. of Rosen, Harwood, Cook & Sledge, Tuscaloosa, for appellee.
SHORES, Justice.
The plaintiff, D.L. Parker, appeals from a summary judgment granted in favor of the defendant corporation, Thyssen Mining Construction, Inc. (TMCI). We affirm.
Parker was injured in the course of his employment with TMCI on November 28, 1979, while supervising the construction of a concrete block wall in Jim Walter Mine No. 4, an underground coal mine in Tuscaloosa County leased and operated by TMCI. Parker was standing on top of the wall, pouring cement into the gap between the wall and the rock facing of the mine, when the wall collapsed beneath him. He sustained various personal injuries and recovered workmen's compensation benefits in a separate action, as provided under Ala.Code 1975, § 25-5-1, et seq.
Following Parker's injury, officials of TMCI twice collected samples of the mortar mix used in constructing the wall for analysis to determine whether the mix was defective. After his return to work, Parker *617 asked his superiors on several different occasions whether the samples had been tested; at one point, he offered to personally pay for the testing. His superiors told Parker only that the samples had been collected for analysis, and that TMCI's headquarters in Denver had ordered them not to discuss the matter any further with Parker. It is undisputed that Parker never received any mortar samples or test results from TMCI prior to the present action.
On July 30, 1980, Parker filed suit under the Alabama Extended Manufacturer's Liability Doctrine against TMCI and several other defendants, who either manufactured or distributed the mortar mix used in constructing the wall that collapsed. Parker's complaint alleged that the proportion of sand to cement in the mix was too great, resulting in insufficient adhesive strength to properly join the blocks together. In addition, Parker claimed that TMCI's actions following his injury damaged his claim against the manufacturer of the mortar mix. Parker later amended his original complaint to charge TMCI with fraudulent deceit and negligence in handling the mortar samples.
In February, 1981, the trial court ordered TMCI to deliver all mortar samples from the collapsed wall in its possession to the University of Alabama School of Engineering for testing and analysis. The results of this analysis proved inconclusive.
TMCI subsequently filed a motion for summary judgment, based on the pleadings, the supporting affidavit of its attorney, and the deposition of D.L. Parker. Parker filed a brief in opposition, urging the trial court to follow the lead of other jurisdictions in permitting such suits outside the Workmen's Compensation Act. The trial court, finding no genuine issue as to any material fact involved, granted TMCI's request for summary judgment. All other defendants were also dismissed, either by summary judgment or by plaintiff's motion. Parker appeals from only that judgment granted TMCI, and we affirm.
We note at the outset that Parker's suit does not seek compensation from TMCI for his physical injuries sustained in the course of his employment. It is well-settled that an action brought under our Workmen's Compensation Act is the exclusive remedy in situations where the employee sues his employer for injury in the course of his employment. Kilgore v. C.G. Canter, Jr. & Associates, Inc., 396 So.2d 60 (Ala.1981); Ala.Code 1975, §§ 25-5-51, 25-5-53. Rather, Parker claims economic injury as a result of TMCI's actions following his injury from the collapsed wall. Counsel summarizes his client's contentions:
"Parker contends that immediately after his injury TMCI became aware that one of the possible causes for the accident was improperly manufactured mortar mix. Acting upon this knowledge TMCI secured samples of the mortar mix for purposes of testing and evaluation. TMCI made a commitment to recover and test samples of the mortar mix. A short time after the injury TMCI further became aware that Parker intended to investigate and to pursue a products liability action against the manufacturer and distributor of the defective mortar mix. Parker relied upon TMCI's collection of the samples, and TMCI was aware of that reliance. These circumstances and TMCI's knowledge of them created the following legal duties on its part:
"1. TMCI had the duty to take reasonable care to insure that the mortar mix samples were procured and preserved.
"2. TMCI had the legal duty to make available the samples of mortar mix or test results based upon those samples to Parker or his counsel for evaluation of a potential products liability action.
"3. TMCI had the duty to take no action which would reduce the evidentiary value of the samples which it had secured at any products liability trial.
"Parker contends that TMCI breached each of these duties."
As a result, Parker claims that his chances of success in his third-party action against the manufacturer of the mortar mix have now been greatly diminished.
*618 Parker argues that, by securing the samples of mortar mix, TMCI established the duty for itself to use reasonable care in the preservation of potential evidence. Alabama recognizes that one who volunteers to act, though under no duty to do so, is thereafter charged with the duty of acting with due care and is liable for negligence in connection therewith. Dailey v. City of Birmingham, 378 So.2d 728 (Ala. 1979); United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala.1978). However, the existence of a voluntarily assumed duty through affirmative conduct is a matter for determination in light of all the facts and circumstances. Professor Prosser noted that "[j]ust when the duty is undertaken, when it ends and what conduct is required, are nowhere clearly defined, and perhaps cannot be." W. Prosser, Handbook of the Law of Torts § 56, at 344 (4th ed. 1971).
The accident which injured Parker was also costly to TMCI, in terms of lost manpower, time and money. TMCI had an obvious self-interest in collecting and analyzing the mortar samples, independent of any possible action Parker might have contemplated. It is true that TMCI did not voluntarily offer Parker any samples or test results, but it was under no duty to do so. Later, TMCI complied promptly when ordered by the trial court to deliver all samples in its possession to the University of Alabama School of Engineering for independent analysis. Parker offered no evidence to support his accusations that TMCI lost, mishandled or destroyed any samples, or that TMCI was aware of his intent to pursue any third-party action. Under the present facts, we are unwilling to impose on TMCI the duty of obtaining evidence needed to enhance Parker's potential third-party action. And, where there is no duty, there can be no negligence. Calvert Fire Ins. Co. v. Green, 278 Ala. 673,180 So.2d 269 (1965).
We also reject Parker's claim of fraudulent deceit. Parker argues that TMCI led him to believe, to his detriment, that TMCI would collect and test the samples, then provide him with either the test results or the actual samples. But the undisputed evidence, as derived from Parker's own deposition, proves otherwise. Parker, when questioned by the attorney for TMCI, revealed the following:
"Q. Then when you returned to the job you asked Eddie Charping [the safety director] a time or two and you also inquired of Hans Jergin, the project engineer, if they had gotten the samples. Did they both tell you they had gotten samples?
"A. Uh-huh (yes).
"Q. And did they both tell you they were going to run some tests?
"A. Well, they said they was going to have it checked.
"Q. Did any of these people [TMCI officials] ever tell you that they would provide you with a copy of whatever test results they came up with?
"A. No, sir.
"Q. Did anybody ever tell you they'd make available to you a sample of the mortar mix?
"A. No, sir."
To constitute fraud, there must be some misrepresentation of material fact to a party who relies upon such misrepresentation to his detriment. Ball v. Vogtner, 362 So.2d 894 (Ala.1978); Ala.Code 1975, §§ 6-5-100 to 6-5-104. From the record before us, there appears no evidence to indicate any misrepresentation by TMCI to Parker; damages alone will not support an action for fraud.
In light of the foregoing, we do not address the issue of whether, under the appropriate set of facts, an employee may sue his employer outside the Workmen's Compensation Act for economic injuries sustained as a result of the employer's wrongful interference with an employee's third-party action against the manufacturer of an allegedly defective product, the use of which resulted in work-related physical injuries.
The judgment of the trial court is affirmed.
AFFIRMED.
*619 TORBERT, C.J., and MADDOX and BEATTY, JJ., concur.
JONES, J., concurs in the result.
JONES, Justice (concurring in the result):
I concur in the result. I would rest the holding entirely on the workers' compensation exclusivity rule. See Adair v. Moretti-Harrah Marble Co., Inc., 381 So.2d 181 (Ala. 1980).