469 So.2d 1270 (1985)
WARWICK DEVELOPMENT COMPANY, INC.
v.
The GV CORPORATION and Grayson Valley Golf and Country Club, Inc.
The GV CORPORATION
v.
WARWICK DEVELOPMENT CO., INC., Claude H. Grayson and Grayson Valley Golf & Country Club, Inc.
82-206, 83-570.
Supreme Court of Alabama.
March 8, 1985.
Rehearing Denied April 5, 1985.
*1272 Samuel Maples of Corretti & Newsom, and W.L. Longshore, Jr. of Longshore & Longshore, Birmingham, for appellant/cross-appellee.
Walter Fletcher and Carleton P. Ketcham, Jr. of Dominick, Fletcher, Yeilding, Wood & Lloyd, Birmingham, for The GV Corporation.
William B. Lloyd, Jr., and Richard C. Fruechtenicht of Lloyd, Ennis & Lloyd, Birmingham, for Grayson Valley Golf & Country Club, Inc.

ON APPLICATION FOR REHEARING
PER CURIAM.
Rehearing is granted; the case is submitted for consideration by the entire court. The opinion of September 21, 1984, is withdrawn, and this opinion is substituted in its place.
Defendant/Appellant Warwick Development Company, Inc. (Warwick), appeals from an adverse judgment entered on a jury verdict in favor of Plaintiffs/Appellees GV Corporation (GV) and Grayson Valley Golf and Country Club, Inc. (Club). The Plaintiffs alleged, and the jury found, that Defendant Warwick had trespassed upon Plaintiffs' property, interfering with a lease agreement and causing irreparable damage to the golf course situated on the property. The jury assessed damages, by way of separate verdicts, in the aggregate amount of $70,000 for trespass, breach of the lease agreement, and abuse of process.
GV cross-appeals from the trial court's order granting motions for directed verdicts in favor of Warwick and Claude H. Grayson on Count IV of GV's complaint. Count IV alleged that Grayson and Warwick were liable for fraud in misrepresenting the acreage encompassed in the lease and option-to-purchase agreement.
We affirm as to the appeal and reverse as to the cross-appeal, and remand this cause to the trial court for a new trial as to Count IV.

FACTS
On December 1, 1976, Warwick entered into a written agreement with Grayson, leasing to him certain real property situated in Jefferson County, Alabama, for use as a golf course. The lease included an option to purchase the real property on certain terms and conditions, and required payment of ad valorem taxes as additional rent. On November 11, 1977, Grayson, with Warwick's permission, assigned his lease and option to Richard Widick and Bobby Lepper at an advertised voluntary public auction. Subsequent to the auction, but before closing the sale, Widick and Lepper and their wives formed the GV Corporation. GV ratified the auction contract and took the assignment from Grayson. Widick and Lepper and their wives then sold their ownership interests in GV Corporation to four other individuals.
In late 1979, Warwick began plans for installation of a sewer line across certain *1273 parts of the golf course in order to further develop land surrounding the golf course owned by Warwick but not included in the lease. Warwick surveyed and staked out the location of the sewer line across the golf course in December 1979, and executed a sewer easement to Jefferson County on December 31 of that year.
On January 24, 1980, James Grayson, Claude Grayson's son and president of Warwick, called the Club concerning the timetable for installing the sewer lines. The manager, who was not a member or stockholder of the Club, responded that he would cooperate in the laying of the sewer. The manager instructed Grayson to contact the person in charge of work on the golf course when construction was to begin.
Construction of the lines began after Warwick guaranteed, in writing, that any damage to the course would be properly repaired and paid for by Warwick. Construction continued for approximately four weeks, until the golf course manager ordered the work stopped.
GV filed suit against Warwick for trespass and breach of the lease agreement. GV also sought injunctive relief to prohibit further trespass and to require removal of the sewer lines which were laid on the golf course.
In October 1980, a $33.68 tax notice was mailed to Warwick, which had previously changed the tax assessment from Grayson to Warwick. Warwick did not pay the taxes due, nor did it mail the notice to GV. The property was sold for taxes, whereupon Warwick redeemed the property, and sent GV a notice of eviction for failure to pay the taxes. The notice read in part as follows:
"We call attention to paragraph numbered eight of said Lease which provides `should Grayson fail to pay the taxes on said property, or should [he] fail to comply with any of the terms of this Lease then, on the happening of any such event, Grayson forfeits [his] right to a conveyance of such property and this Lease and the Option to Purchase shall become null and void at the option of Warwick.'
"A portion of the property covered by that Lease was sold to the state of Alabama this year for 1980 taxes. Warwick Development Company has redeemed this property from the State of Alabama.
"Due to your failure to pay the 1980 taxes we are declaring the Lease and Option to Purchase null and void.
"This is to notify you that you are to surrender peaceable possession to Warwick Development Company as provided in said Lease."
Following the notice of eviction, Warwick counterclaimed against GV and the Club, which had previously been allowed to intervene as a party plaintiff, claiming unlawful detainer and demanding possession of the premises. GV and the Club amended the complaint to charge Warwick with abuse of process and demanded compensatory and punitive damages. Prior to trial, a survey was conducted which showed that the 2.7 acres of Warwick's land surrounding the leased property, but not within the property description of the lease, was being used as a golf playing area. Warwick again amended its counterclaim seeking ejectment against GV and the Club with regard to this 2.7 acres. Additionally, Warwick requested reformation of the lease to increase the rental payment due Warwick from GV for this acreage. GV and the Club again amended the complaint, to claim fraud on the part of Warwick and to add Grayson as a party defendant. GV and the Club claimed that Warwick and Grayson had misrepresented the correct acreage contained in the lease at the time of its assignment by Grayson to the promotors of GV.
At trial, following the close of all the evidence, the trial judge directed verdicts in favor of Grayson and Warwick on the fraud issue. The directed verdict effectively dismissed Grayson from the lawsuit. The jury returned verdicts favorable to GV and the Club on all remaining issues. The court, in its final decree, awarded use of *1274 the disputed property outside the leasehold to Plaintiffs.

ISSUES AND DECISION

As to the Appeal
Warwick advances several theories to support a reversal of the judgment below. After careful analysis of the lengthy briefs and voluminous record, we deem it necessary, in regard to the appeal, to discuss only Warwick's claim that the trial judge's failure to dismiss the abuse of process claim brought by GV and the Club constitutes reversible error.
Warwick's initial position that an underlying action of some sort must terminate in the plaintiff's favor before an abuse of process action can be maintained is misplaced. Abuse of process is often confused with the tort of malicious prosecution. Several important elements, however, distinguish the two. The chief distinction is that in an action for malicious prosecution the original action must terminate in favor of the plaintiff. An abuse of process action, on the other hand, does not require termination in favor of the person bringing the action; in fact, abuse of process does not even require termination of the suit. The reason for the distinction is that malicious prosecution concerns the wrong in the issuance of the process, while abuse of process rests on the wrongful use of the process after it has been issued. Wilson v. Brooks, 369 So.2d 1221 (Ala.1979); Clikos v. Long, 231 Ala. 424, 165 So. 394 (1936); Dickerson v. Schwabacher, 177 Ala. 371, 58 So. 986 (1912). An abuse of process action "presupposes an originally valid and regular process, duly and properly issued, and the validity of the process is no defense to an action for its abuse." Farm Country Homes, Inc. v. Rigsby, 404 So.2d 573, 576 (Ala.1981). See also Board of Education v. Farmingdale Classroom Teacher Association, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975), for a good discussion of the evolution of the tort.
GV and the Club filed their abuse of process claim following Warwick's amendment to its counterclaim seeking to eject GV and the Club from the premises for failure to pay a portion of the ad valorem taxes. Here, the "process" issued with the filing of the counterclaim by Warwick, not with the letter notice sent to GV declaring the lease null and void. The burden is on the plaintiff to show that the process was issued for an illegal purpose.[1] The defendants contend that because they had some reason to test the validity of the lease, the filing of the counterclaim contesting the validity does not constitute abuse of process. However, we do not believe that the resolution of the issue of whether there was an abuse hinges on whether there is a valid use for which process could be used, but whether there was an ulterior purpose in filing this action and a willful act in the use of the process not proper in the regular conduct of the proceeding. Reynolds v. McEwen, 416 So.2d 702 (Ala.1982). For example, in Board of Education v. Farmingdale Classroom Teacher Association, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975), the court held there was abuse of process when an attorney subpoenaed 87 teachers as witnesses for a hearing when it was proven that it was done for the ulterior purpose of harassment and intent to injure the Board of Education. Obviously, he had a right to subpoena witnesses for the hearing. The court held, "[w]here process is manipulated to achieve some collateral advantage, whether it be denominated extortion, blackmail or retribution, the tort of abuse of process will be available to the injured party." Id., 38 N.Y.2d at 404, 380 N.Y.S.2d at 643, 343 N.E.2d at 283.[2] A *1275 typical case of abuse of process is where criminal proceedings are started for the purpose of collecting a debt. Tolbert v. State, 294 Ala. 738, 321 So.2d 227 (1975); Hotel Supply Co. v. Reid, 16 Ala.App. 563, 80 So. 137 (1918); see generally W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971). The fact that there was a proper use for the criminal proceedings would not be a defense to an abuse of process action.
In this case plaintiff contends that defendants' only purpose for filing the unlawful detainer claim was retribution for being sued. There is evidence from which the jury could infer that the defendant orchestrated the non-payment of taxes so as to set up the unlawful detainer claim. James Grayson testified to the following at trial:
"Q. [By Mr. Acker] And you let GV Corporation pay the taxes for that year on the property you hadWarwick had the fee simple title in, is that right?
"A. Yes.
"Q. You didn't send any eviction notices?
"A. No, sir.
"Q. And you didn't send any notices of termination of the lease?
"A. And we weren't being sued either.

"Q. And you weren't being sued either, is that what you said? I want to hear that again, `You weren't being sued either?' Is that what you said?
"A. That is correct.
"Q. So when you were being sued, you sent an eviction notice, is that right? Yes or no?
"A. We started abiding by the letter of the lease.
"Q. Did you file an eviction notice when you were not being sued? Did you?
"A. I didn't.
"Q. You didn't abide by the letter of the lease until you were sued, is that right?
"A. Because we were doing everything we could to help the country club go." (Emphasis supplied.) (TR. 1750).
As this exchange shows, prior to being sued defendants had cooperated in allowing plaintiffs to pay the taxes. After being sued they did not do so because of the fact that they were being sued. The failure to pay taxes was the basis of the unlawful detainer claim. Therefore, this claim would not call into question the validity of the lease at the time plaintiffs' claims arose. The jury could infer from this that upon being sued the defendant created a claim and sued plaintiffs in retribution.
We believe that under these facts there was sufficient evidence from which the jury could find that defendants initiated the unlawful detainer proceedings as retribution for plaintiffs' having sued the defendants and not to test the validity of the lease. Therefore, the judgment for plaintiffs is affirmed.

As to the Cross-Appeal
GV contends that the trial judge erred in directing verdicts in favor of Grayson and Warwick on the fraud count. Thus, the issue presented on the cross-appeal is whether a scintilla of evidence was presented at trial to support GV's assertion that a misrepresentation was made by Grayson to the promoters of GV and that the misrepresentation was relied upon by GV, thereby causing GV to be damaged. There is ample evidence of record from which the jury could reasonably conclude that a misrepresentation, however innocent, was made; and, that because of that misrepresentation, GV was unable to exercise the option to purchase the golf course contained in the lease.
The evidence shows that Grayson owned the lease on the golf course as of October 27, 1977. Subsequent to that date, he placed his leasehold interest in the golf course property and its accompanying clubhouse facilities for sale at a public auction. The brochures and other materials distributed for the sale included a map of the golf *1276 course as it was actually being played at the time of the sale. Unknown to Grayson, or to the purchasers of the lease, Grayson held an accompanying option to purchase 2.7 acres of land which was being used as a golf playing area, but which was not contained in the legal description of the leased property.
The lease and option were purchased by Widick and Lepper. They, along with their wives, formed GV Corporation for the express purpose of owning, operating, and maintaining the golf course. GV, with the express permission and consent of Grayson and Warwick, assumed and took an assignment of Widick's and Lepper's bid rights. GV ratified the contract and closed the sale with Grayson. In the process, Widick and Lepper and their wives transferred their ownership rights in GV to four other individuals.
The trial judge directed a verdict in favor of Grayson and Warwick on the fraud count, not because there was no misrepresentation, but because the purchase by GV separated GV from the transaction. This analysis is misplaced. A corporation can act only through its officers and agents. Even though promoters or initial incorporators are not technically agents of the corporation to be formed, once the corporation is formed and the new corporation ratifies the acts of its promoters and incorporators, the corporation succeeds to all the rights and remedies, as well as the liabilities, which the promoters and initial incorporators had acquired before incorporation.
Although we find no Alabama decisions on this point, we quote with approval the following language from 18 C.J.S. Corporations § 123 (1939):
"A corporation [here, GV] may maintain an action sounding in tort against one [here, Grayson] who by fraudulent misrepresentations to a promoter [here, Widick and Lepper] has procured a sale of property [here, the golf course] to the corporation [GV], and also, where false and fraudulent representations are made to individuals [Widick and Lepper] to induce them to form a corporation [GV] for the purpose of purchasing property [the golf course] or rights or entering into a contract, and the corporation [GV], when created by such individuals [Widick and Lepper], who become its stockholders and officers, acts upon such representations to its injury, it may maintain an action for fraud."
The fact that the incorporators sell their interest in the corporation to others does not create another step that separates the promisor from the promisee. It is the corporation, not the individual incorporators or their assignees, that here asserts its misrepresentation claim.
Alternatively, Warwick contends that GV's fraud claim must fail for lack of proof of damages. But Warwick's assertion that it never objected to GV's use of the entire golf course (including the 2.7 contested acres) speaks only to one part of the agreementthe lease of the premises. The other, an equally important part of the agreement, concerns the option to purchase the golf course property at a specified time at a specified price. Because of the disputed acreage, Warwick refused to honor the agreed-upon option. Moreover, Warwick's efforts to evict GV from the property is hardly consistent with the "lack of objection to GV's use" argument.
Because the trial judge erred in directing verdicts in favor of Grayson and Warwick on GV's fraud claim, we reverse the judgment and remand the cause as to that issue. Therefore, on remand, a new trial is ordered on GV's fraud claim.
REHEARING GRANTED; OPINION OF SEPTEMBER 21, 1984, WITHDRAWN; OPINION SUBSTITUTED.
AFFIRMED AS TO THE APPEAL.
REVERSED AND REMANDED AS TO THE CROSS-APPEAL.
TORBERT, C.J., and MADDOX, ALMON, SHORES and BEATTY, JJ., concur.
*1277 FAULKNER, JONES, EMBRY and ADAMS, JJ., concur as to the cross-appeal and dissent as to the appeal.
JONES, Justice (concurring in part and dissenting in part).
I agree with the Court's opinion in all its aspects except one. I respectfully disagree with what I perceive to be an extension of the cause of action for abuse of process. Previously, ulterior motive, coupled with frivolousness of the claim, has not been the test of Alabama's version of this tort.
Citing Reynolds v. McEwen, 416 So.2d 702 (Ala.1982), the Court formulates the test: "[T]he resolution of the issue of [abuse of process] hinges on ... whether there was an ulterior purpose in filing this action and a willful act in the use of the process not proper in the regular conduct of the proceeding." The opinion then proceeds to emphasize the first prong of the test without again mentioning the second prong. Here, contrary to the factual premise of Reynolds (a malicious prosecution case), there was no improper use of the process in the regular conduct of the proceeding.
In the instant case, although the purpose may have been unfounded on its merits, and one on which GV ultimately would prevail, its purpose was the very one Warwick sought to achieve: to contest the validity of the lease on the ground that GV failed to pay $33.68 in taxes. In other words, however weak or ineffectual Warwick's affirmative claim or defense of GV's nonpayment of taxes may have been, nonetheless, in my opinion, the requisite element of unlawful or abusive purpose for which the process was issued has not been shown.
The wisdom of issuing the process is not the test of its abusiveness or its propriety. While the evidence is replete with reasonable inferences of Warwick's breach of the lease agreement and of its trespass upon the leasehold, Warwick's counterclaim, seeking relief on grounds of GV's alleged breach, albeit a weak claim, is not so devoid of merit, as a matter of law, as to impugn the legality of its use and thus constitute abuse of process. Farm Country Homes, Inc. v. Rigsby, 404 So.2d 573 (Ala.1981), is factually distinguishable from the instant case in that the abuse of process defendant in Rigsby willfully and improperly used the process in the regular course of the proceedings.
Here, while Warwick's amendment to its counterclaim sought to eject GV and the Club from the lease premises (based on the alleged breach), no order of ejectment, interlocutory or otherwise, ever issued; and no interference with the person or property of either of the Appellees resulted from the unlawful detainer suit. Dempsey v. Denman, 442 So.2d 63, 65 (Ala.1983). In other words, Warwick's claimed breach of the lease for nonpayment of taxes, with its prayer for ejectment based on such breach, was a mere pleading in the ongoing litigationa pleading upon which Warwick did not ultimately prevail.
Ironically, the majority opinion relies upon Professor Prosser's explanation of the tort of abuse of process (also quoted in Reynolds):
"Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself.... There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort. The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive." W. Prosser, Handbook of the Law of Torts, § 121 (4th ed. 1971).
A word of caution to Bench and Bar: Facts from which ulterior motive may be *1278 gleaned, coupled with a frivolous claim, now constitutes a valid claim for abuse of process. No longer must the abuse of process plaintiff show that the defendant willfully used the process, which he caused to be issued, for an improper purpose in the regular course of the proceeding. By eliminating this "illegal use" or "improper act" element, the Court, in effect, has now created a cause of action for malicious prosecution without the requirement that the former action be terminated in favor of the plaintiff in the subsequent action.
I must say, in conclusion, that if I were in agreement with the newly-created cause of action, I would then agree that the instant facts comport with the opinion's prescribed test of such a claim.
NOTES
[1] It should be noted that the word "purpose," when used in this context, does not mean the original purpose for which the process may legally be employed, but the illegal purpose for which, in fact, the process was used.
[2] Arguably, Rigsby, supra, was a case where the court found that no proper use of the garnishment and ejectment proceedings existed because they grew out of fraudulent and deceitful conveyances. However, as stated, we do not believe that such a finding is a prerequisite to establishing an abuse of process claim.