[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1282 
On February 18, 1983, Drill Parts and Service Company, Inc. ("Drill Parts"), and Carlton Montgomery sued Joy Manufacturing Company ("Joy"), Donald Earl Giles, Legal Services Detective Agency ("Legal Services"), Richard Gianetti, and Michael Jenkins, alleging false imprisonment, trespass, abuse of process, defamation, and conspiracy. The defendants moved for a summary judgment. On March 11, 1992, the trial court entered a summary judgment for the defendants as to all claims. The plaintiffs appeal. We affirm.
Before relating the facts, we note that "[i]n reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the defendant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988); Rule 56(c), Ala.R.Civ.P. Because the plaintiffs commenced this action before June 11, 1987, the applicable standard for testing a summary judgment motion is the "scintilla rule." Ala. Code 1975, § 12-21-12. Under that standard, when the movant has made a prima facie showing, by admissible evidence, that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the party opposing the summary judgment motion need only produce a scintilla of evidence establishing the existence of a genuine issue of material fact. If the nonmovant carries this burden, the trial court must deny the motion for summary judgment. Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94
(Ala. 1985); see Rule 56(c), Ala.R.Civ.P., and comments thereto. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).
Joy manufactures "Robbins Drills," rotary drills used primarily in the mining and construction industries to drill holes for *Page 1283 
explosives. It acquired the right to manufacture Robbins Drills in 1971 from Robbins Machinery Company, Inc. ("Robbins"). Approximately 40 percent of the replacement parts for Robbins Drills are custom designed and manufactured to fit the drills. Joy manufactures some of these custom-designed parts itself and it subcontracts with independent machine shops for the manufacture of some parts. Joy's engineers calculate the configurations, dimensions, materials, tolerances, and other specifications for each part and record this information on an engineering drawing. Joy places its logo on each engineering drawing, and it contends that these drawings are its trade secrets. Although the parties in this action dispute the adequacy of the security measures Joy uses to protect its drawings from use by competitors, this Court has already reviewed the evidence pertaining to Joy's protective measures in Drill Parts Service Co. v. Joy Manufacturing Co.,439 So.2d 43 (Ala. 1983) (hereinafter Drill Parts I). In that case we held that there was sufficient evidence from which the trial court could find that Joy's drawings constituted trade secrets.Id. at 45-47, 49-50.
The plaintiff Carlton Montgomery worked first for Robbins and thereafter for Joy, until 1977, when he left Joy to form Drill Parts, a company designed to compete with Joy in servicing and selling replacement parts for mining and construction equipment, including Robbins Drills. The plaintiffs admit that Montgomery obtained several hundred copies of Joy's engineering drawings and used them to manufacture parts for Robbins Drills. However, they claim he violated no criminal law in obtaining these drawings.
In August 1982, Joy's vice president, Donald Giles, received an anonymous tip informing him that a former Joy employee had stolen copies of Joy's engineering drawings. This tip prompted Joy to hire Legal Services, a private detective agency owned by Richard Gianetti, to investigate several of Joy's competitors. In September 1982, Gianetti contacted Sergeant Dennis Blass of the "Leviticus Project Association," a United States Department of Justice investigation into crime in the coal industry. Gianetti, Giles, and Blass met to discuss the possibility of criminally prosecuting any of Joy's competitors in possession of Joy's drawings. Although the parties to this action dispute the details and the significance of this meeting, as a result of it Blass commenced a criminal investigation of Montgomery and Drill Parts.
Blass made several telephone calls to Montgomery, posing as a "locator" from Fort Collins, Colorado, trying to find replacement parts for Robbins Drills on behalf of a client in Mexico. Ultimately, Montgomery agreed to sell Blass a set of 65 engineering drawings for $18,000 in cash. On October 18, 1982, the day before the exchange took place, Blass and Gianetti, without Montgomery's knowledge, inspected Drill Parts' warehouse, through an open door. They claim to have seen in the warehouse at that time several copies of engineering drawings bearing Joy's logo. Around 9:00 p.m. the same day, Blass and Gianetti went to Judge Jack Montgomery's home and secured from him a warrant authorizing a general search of Drill Parts' premises and a seizure of any documents belonging to Joy.
On October 19, 1982, before Blass met Montgomery, Blass met with a Jefferson County deputy sheriff and several officers from the Birmingham Police Department and instructed them in executing the search warrant at Drill Parts. At 9:00 a.m. Blass met Montgomery in the lobby of the Airport Holiday Inn in Birmingham and took him to room 212. Montgomery then sold Blass copies of Joy's engineering drawings, and Blass arrested him for theft of property. Police officers located in room 210 listened to the transaction between Blass and Montgomery and assisted Blass with Montgomery's arrest. Gianetti was also present in room 210, as was a reporter from the BirminghamNews, Nancy Campbell.
Following his arrest, Montgomery was taken to jail, fingerprinted, and photographed. He was released from custody that afternoon. He has never been criminally prosecuted for his possession of Joy's *Page 1284 
engineering drawings. Montgomery alleges that the defendants caused his arrest and that Blass did not have probable cause to arrest him. Therefore, he says, the defendants are liable for falsely imprisoning him.
At about 12:00 noon on October 19, 1982, shortly after Montgomery's arrest, police officers executed the search warrant against Drill Parts. Giles and Michael Jenkins, a private investigator employed by Legal Services, assisted the officers in examining file cabinets, desks, and bookshelves on Drill Parts' premises. The officers seized several copies of Joy's engineering drawings and two hardware books containing the serial numbers for Joy's custom designed parts. The plaintiffs claim that Giles and Jenkins trespassed on Drill Parts' premises, not only because, they say, the officers executing the search warrant had not requested Giles and Jenkins's assistance, but also because, they say, Judge Montgomery lacked probable cause for issuing a search warrant.
The plaintiffs further allege that the defendants knew, or should have known because of what they refer to as Joy's inadequate protective measures, that the plaintiffs had violated no criminal law in obtaining copies of Joy's engineering drawings and, they further allege, the defendants, despite their knowledge, caused Judge Montgomery to issue a search warrant against Drill Parts by willfully misrepresenting to Blass and Judge Montgomery that the defendants had violated a criminal law. The plaintiffs claim that the defendants used the criminal search warrant to gather information to use in a civil trial against Drill Parts.[1] Therefore, the plaintiffs contend that the defendants are liable for abuse of process.
On October 20, 1982, November 5, 1982, and January 30, 1983, the Birmingham News published articles about Montgomery's arrest, his possible theft indictment, and the search of Drill Parts' premises. The Birmingham Post-Herald also published an article on October 21, 1982, about Montgomery's arrest. The plaintiffs claim that all of these articles were defamatory per se.
 I. False Imprisonment
First, the plaintiffs argue that the summary judgment for the defendants was improper as to the false imprisonment claim, because, they say, the defendants caused Montgomery's arrest and the arrest was unlawful because Blass had not complied with either § 15-10-3 or -4, Ala. Code 1975.
"False imprisonment consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his liberty." Ala. Code 1975, § 6-5-170. Section 15-10-4
lists the procedural requirements for a warrantless arrest. It provides, in part: "When arresting a person without a warrant, the officer must inform [the arrestee] of his authority and the cause of arrest, except when the person is arrested in theactual commission of a public offense or on pursuit." Ala. Code 1975, § 15-10-4 (emphasis added). The defendants admit that, because Blass was operating undercover, he did not inform Montgomery that he was a police officer. However, the defendants argue that Montgomery's arrest was within the exception to § 15-10-4, for arrests made during the actual commission of an offense. Because the defendants made a prima facie showing that Blass arrested Montgomery because Blass believed that Montgomery was selling him stolen engineering drawings, and the plaintiffs offered no *Page 1285 
scintilla of evidence to rebut that showing, the arrest complied with § 15-10-4.
The plaintiffs also argue that Montgomery's arrest violated § 15-10-3, the statute authorizing warrantless arrests, because, they say, had Blass conducted a proper investigation, he would have learned that Montgomery had violated no criminal law in obtaining copies of Joy's engineering drawings. Therefore, they say, Blass lacked the probable cause necessary to arrest Montgomery without a warrant.
Blass stated in his affidavit that he arrested Montgomery without a warrant because he had probable cause to believe that Montgomery had stolen Joy's property. Blass says he based his belief on his knowledge of Joy's procedures for protecting the secrecy of its engineering drawings; on his investigation of Drill Parts' warehouse, which, he says, revealed copies of Joy's engineering drawings in Drill Part's possession; and on the fact that, he says, during one of his conversations with Montgomery, Montgomery asked him not to reveal that Montgomery was selling him copies of Joy's drawings. Therefore, the defendants made a prima facie showing that, even if Montgomery obtained copies of Joy's drawings without violating a criminal law, at the time Blass arrested Montgomery Blass had probable cause for believing that Montgomery had committed a theft of property, and the plaintiffs have presented no scintilla of evidence to rebut this showing. See Ala. Code 1975, §15-10-3(4).
Because the evidence showed that Blass's arrest of Montgomery did not violate § 15-10-3 or -4, we conclude that Montgomery's arrest was not wrongful. Accordingly, we affirm the summary judgment as to the plaintiffs' false imprisonment claim.
 II. Trespass
The plaintiffs also argue that the summary judgment for the defendants was improper as to the trespass claim. The plaintiffs assert alternative theories under which the defendants would be liable for trespassing on Drill Parts' premises. First, the plaintiffs argue that everyone who entered Drill Parts' premises under the authority of the search warrant committed trespass, because, they say, the warrant was invalid. They say it was invalid because, in issuing it, they say, Judge Montgomery did not comply with Ala. Code 1975, §§ 15-5-2, -4, and -5, and because, they also say, it did not describe with particularity the property to be seized.
Alabama Code 1975, § 15-5-5, authorizes a judge to issue a search warrant when he has probable cause for believing that one of the grounds for issuance listed in § 15-5-2 exists. In this case Judge Montgomery stated in the search warrant that he was issuing it because he found probable cause for believing that Drill Parts possessed "blueprints and other documents belonging to Joy." This finding satisfies § 15-5-2(1), which authorizes the issuance of a warrant when there is probable cause for believing that property has been stolen or embezzled.
Section 15-5-4 requires a judge, before issuing a warrant, to take a written deposition from the complainant, setting forth the facts establishing probable cause for issuing the warrant. The record shows that Blass prepared a written memorandum setting forth the facts giving him probable cause for suspecting Montgomery and Drill Parts of theft, and it further shows that Blass gave this memorandum to Judge Montgomery. Clearly, Judge Montgomery satisfied § 15-5-4.
Because we reject the plaintiffs' argument that the warrant was invalid under § 15-5-2, -4, or -5, we turn to the plaintiffs' argument that the search warrant did not describe with particularity the property to be seized. The search warrant directed any lawful officer of Jefferson County, Alabama, to conduct a search of Drill Parts' premises and to seize "[b]lueprints and other documents belonging to Joy." The plaintiffs argue that, because the warrant specified only property "belonging to Joy," it was not adequate guidance for officers attempting to determine what property to seize. *Page 1286 
The Alabama Court of Criminal Appeals has held that a search warrant is not invalid merely because it provides only a general description of the property to be seized, "if a more precise description is not possible." State v. Teague,469 So.2d 1310, 1317 (Ala.Crim.App. 1985). The record in this case shows that Blass attached an affidavit to the search warrant. The affidavit listed property, possessed by Montgomery, but allegedly belonging to Joy, including blueprints to Joy's products and equipment. The affidavit also contained Blass's statement that he had seen the listed items on Drill Parts' premises. In his deposition, Blass stated that, in preparing the officers assigned to search Drill Parts' premises, he showed them a copy of one of Joy's engineering drawings, and, he says, he told them that representatives from Joy would be present during the search to help the officers identify Joy's property. The defendants' evidence, unrebutted, requires a conclusion that the search warrant was not invalid for a lack of specificity, and we therefore reject the plaintiffs' argument that everyone who entered Drill Parts' premises pursuant to the search warrant was a trespasser.
Alternatively, the plaintiffs argue that Giles and Jenkins trespassed on Drill Parts' premises because they accompanied the police officers who searched Drill Parts' premises but, the plaintiffs say, had not been invited by those officers. Ala. Code 1975, § 15-5-7, provides: "A search warrant may be executed by any one of the officers to whom it is directed, butby no other person except in aid of such officer at hisrequest, he being present and acting in its execution." (Emphasis added.) In construing the emphasized portion of this statute, the Alabama Court of Criminal Appeals has held that an officer need not expressly request the civilian's assistance in order to comply with the statute; instead, that court concluded that § 15-5-7 is satisfied if a reasonable person would infer from the circumstances that the officer executing the search warrant requested the civilian's assistance. Yeager v. State,500 So.2d 1260, 1273 (Ala.Crim.App. 1986).
In his deposition given in support of the defendants' summary judgment motion, Blass stated that, before the search, he asked Giles and Jenkins to help the officers conducting the search to identify Joy's property and, he says, he told all the officers executing the warrant that Giles and Jenkins would be available to assist them during the search. All of the evidence indicates that Blass was ultimately responsible for the search. Therefore, we conclude that the defendants have made a prima facie showing that a reasonable person would infer from these circumstances that the officers who physically executed the search warrant had requested assistance from Giles and Jenkins. The plaintiffs presented no scintilla of evidence rebutting that showing. Accordingly, we affirm the summary judgment as to the plaintiffs' trespass claim.
 III. Abuse of Process
The plaintiffs also argue that the summary judgment was improper as to their abuse of process claim because, they say, the defendants used a criminal search warrant to gather evidence for a civil action against the plaintiffs. This Court recently held, in Dardess v. Blasingame, 585 So.2d 8, 10 (Ala. 1991), that "[t]he elements of a cause of action for abuse of process are: 1) malice; 2) the existence of an ulterior purpose; 3) an act in the use of process not proper in the regular prosecution of the proceedings; and 4) lack of probable cause." Over the years this Court has struggled with the question of whether lack of probable cause is an essential element of an abuse of process action. This Court defined the actions of malicious prosecution and abuse of process, and distinguished between these actions, in Dickerson v.Schwabacher, 177 Ala. 371, 375-76, 58 So. 986, 988 (1912):
 "One essential difference between the actions is that malicious prosecution refers to malice and wrong in the issuance of the process, while abuse of process refers to malicious and wrongful use of process which is regular and right in issuance. . . . '[I]n the action of malicious *Page 1287 
cious prosecution . . . the [initial action] must be wrongful, and must have been sued out with malice, and without probable cause. . . . [But,] if process, either civil or criminal, is willfully made use of for a purpose not justified by law, this is abuse for which an [abuse of process] action will lie.' "
(quoting Brown v. Master, 104 Ala. 451, 462-63, 16 So. 443,446-47 (1894)). After Dickerson, this Court stated, in Clikosv. Long, 231 Ala. 424, 428, 165 So. 394, 397 (1936), that an abuse of process action consisted of two elements: " 'First the existence of an ulterior purpose, and, second, an act in the use of process not proper in the regular prosecution of the proceedings.' " (Quoting T. Cooley, Cooley on Torts § 131, at 437 (4th ed. 1932)).
Tarver v. Household Finance Corp., 291 Ala. 25, 277 So.2d 330
(1973), was the first Alabama case holding that lack of probable cause was an element in an abuse of process action. The Tarver Court discussed Dickerson and Clikos, and quoted an excerpt from Prosser on Torts (4th ed.) § 121 stating that, " 'in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause.' " Tarver, 291 Ala. at 28, 277 So.2d at 333. Ultimately, theTarver Court relied upon the following statement from Dudley v.Stansberry, 5 Ala. App. 491, 59 So. 379 (1912), as authority for requiring the plaintiff to prove lack of probable cause in an abuse of process action: " 'If the . . . [appellees] procured the garnishment . . . for the purpose of extorting money from [the appellant], then there was an absence of probable cause and no grounds for procuring the writ of garnishment. . . .' "Tarver, 291 Ala. at 27, 277 So. at 332 (quoting Dudley,5 Ala. App. at 494, 59 So. at 380).
After Tarver, this Court considered several abuse of process claims, none of which referred to Tarver or to lack of probable cause as an essential element of abuse of process. See Reynoldsv. McEwen, 416 So.2d 702 (Ala. 1982); Farm Country Homes, Inc.v. Rigsby, 404 So.2d 573 (Ala. 1981); Duncan v. Kent,370 So.2d 288 (Ala. 1979); Wilson v. Brooks, 369 So.2d 1221 (Ala. 1979). This Court did refer to Tarver in Tapscott v. Fowler,437 So.2d 116, 119 (Ala. 1983), as an alternative ground for affirming the trial court's dismissal of an abuse of process claim. Later, however, this Court decided Warwick Development Co. v.GV Corp., 469 So.2d 1270, 1274 (Ala. 1985), in which we indicated that the defendant was liable for abuse of process, even though he had probable cause for initiating the process, because the "abuse of process rests on the wrongful use of the process after it has been issued." We further stated, inWarwick, that "[a]n abuse of process action 'presupposes an originally valid and regular process, duly and properly issued, and the validity of the process is not a defense to an action for its abuse.' " Id. at 1274 (quoting Rigsby, 404 So.2d at 576).
This Court resurrected Tarver in Higgins v. Wal-Mart Stores,Inc., 512 So.2d 766, 768 (Ala. 1987), and buried it again inEidson v. Olin Corp., 527 So.2d 1283, 1287-88 (Ala. 1988), where we cited the plaintiff's lack of evidence of wrongful use of process, not the existence of probable cause for the process, as the ground for holding that he could not recover on an abuse of process claim. In Caine v. American Life Assur.Corp., 554 So.2d 962, 965 (Ala. 1989), a majority of this Court resurrected Tarver again. However, "[t]he great weight of authority is to the effect that in an action for abuse or malicious use of legal process it is not necessary to allege want of probable cause." Annot., Necessity and Sufficiency ofAllegations in Complaint for Malicious Prosecution or TortAction Analogous Thereto That Defendant or Defendants ActedWithout Probable Cause, 14 A.L.R.2d 264, 323 (1950). SeeGrip-Pak, Inc. v. Illinois Tool Works, Inc., 694 F.2d 466, 471
(7th Cir. 1982) (applying Illinois law), cert. denied,461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); Deary v. Evans,570 F. Supp. 189, 200 (D.V.I. 1983); Sage International, Ltd.v. Cadillac Gage Co., 556 F. Supp. 381, 388-90 *Page 1288 
(E.D.Mich. 1982); Voytko v. Ramada Inn of Atlantic City,445 F. Supp. 315, 325 (D.N.J. 1978); United States v. Chatham,415 F. Supp. 1214, 1218 (N.D.Ga. 1976); Chain v. International CityBank Trust Co., 333 F. Supp. 463, 481 (E.D.La. 1971) (applying Mississippi law); Hall v. Field Enterprises, Inc.,94 A.2d 479, 481 (D.C.App. 1953); Nienstedt v. Wetzel, 133 Ariz. 348,651 P.2d 876, 881 (Ariz.App. 1982); Gause v. First Bankof Marianna, 457 So.2d 582, 584 (Fla.Dist.Ct.App. 1984);Cline v. Flagler Sales Corp., 207 So.2d 709, 711 (Fla. Dist. Ct. App. 1968); Price v. Fidelity Trust Co., 74 Ga. App. 836,41 S.E.2d 614, 616 (1947); Davison-Paxon Co. v. Walker,45 Ga. App. 395, 165 S.E. 160, 163 (1932); Holiday Magic Inc. v.Scott, 4 Ill. App.3d 962, 282 N.E.2d 452, 455 (1972); Brody v.Ruby, 267 N.W.2d 902, 905 (Iowa 1978); Grigsby's Ex'r v.Ratecan, 6 Ky. Ops. 170 (1872); Page v. Cushing, 38 Me. 523
(1854); Cottman v. Cottman, 56 Md. App. 413, 468 A.2d 131, 140
(1983); Dangel v. Offset Printing, Inc., 342 Mass. 170,172 N.E.2d 610, 611 (1961); Moore v. Michigan National Bank,368 Mich. 71, 117 N.W.2d 105, 106-07 (1962); Grimestad v. Lofgren,105 Minn. 286, 117 N.W. 515, 518 (1908); Pic-Walsh Freight Co.v. Cooper, 618 S.W.2d 449, 453 (Mo. 1981); Board of Educationof Farmingdale Union Free School District v. FarmingdaleClassroom Teachers Ass'n, Inc., 38 N.Y.2d 397, 380 N.Y.S.2d 635,641, 343 N.E.2d 278, 282 (1975); Klander v. West,205 N.C. 524, 171 S.E. 782, 783 (1933); Ash v. Cohn, 119 N.J.L. 54,194 A. 174, 176 (1937); Priest v. Union Agency, 174 Tenn. 304,125 S.W.2d 142, 143 (1939); Kool v. Lee, 43 Utah 394,134 P. 906, 909 (1913); Glidewell v. Murray-Lacy Co., 124 Va. 563,98 S.E. 665, 667 (1919); Gem Trading Co. v. Cudahy Corp.,92 Wn.2d 956, 603 P.2d 828, 832 n. 2 (1979); Strid v. Converse,111 Wis.2d 418, 331 N.W.2d 350, 355 (1983).
According to W. Keeton, Prosser and Keeton on Torts § 121 (5th ed. 1984), "in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause." Likewise, 72 C.J.S. Process § 107 (1987), states:
 "Since an action for abuse of process presupposes an originally valid and regular process, duly and properly issued, the validity of the process is no defense to an action for its abuse, and [the] plaintiff cannot support his case by showing invalidity of the process as a basis for proving abuse."
(Footnotes omitted.)
Restatement (Second) of Torts § 682 cmt. a (1977) states the following with respect to abuse of process actions:
 "[I]t is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceeding terminated in favor of the person instituting or initiating them."
In light of the overwhelming authority and persuasive analysis indicating that lack of probable cause is not an essential element of abuse of process, we reaffirm theDickerson, Clikos, Wilson, Duncan, Rigsby, Reynolds, WarwickDevelopment Co., and Eidson holding that lack of probable cause is not a necessary element of abuse of process, and we overruleDardess, Caine, Higgins, Tarver, Tapscott, and Dudley to the extent that they held otherwise.
Because we have adopted this position, we need only address the defendants' argument that the plaintiffs presented no evidence of malice. The plaintiffs contend that the defendants caused Judge Montgomery to issue a criminal search warrant against Drill Parts by willfully misrepresenting to Blass and Judge Montgomery that Drill Parts had violated a criminal law when, they say, the defendants knew, or should have known, because of Joy's inadequate protective measures, that the plaintiffs had violated no criminal law to obtain *Page 1289 
copies of Joy's drawings. The plaintiffs rely on the fact that neither Montgomery nor Drill Parts has been criminally prosecuted for possessing copies of Joy's engineering drawings. Conversely, the defendants contend that they did not know how Drill Parts obtained copies of Joy's engineering drawings. Giles testified that he initiated an investigation of several of Joy's former employees that were competing with Joy to supply designed parts for Robbins Drills because, he said, he had received an anonymous tip indicating that one of these competitors had stolen Joy's drawings.
In Clikos this Court stated: " 'To be remedial the abuse of process must have been willful and for an unlawful purpose. Good faith is a defense.' " Clikos, 231 Ala. at 428,165 So. at 398 (emphasis added) (quoting 50 C.J. Process § 378, at 616 (1930)); see 72 C.J.S. Process § 109 (1987). Because the element of malice requires the plaintiff to show willful conduct on the defendant's part, to establish malice in this case the plaintiffs must show that the defendants willfully caused a criminal search warrant to issue for the wrongful purpose of obtaining discovery for a civil action against the plaintiffs. The record establishes that Giles and Jenkins were on the premises of Drill Parts to assist in identifying property belonging to Joy, and the plaintiffs have presented no substantial evidence that their presence was for a wrongful purpose. Accordingly, we affirm the summary judgment as to the plaintiffs' abuse of process claim.
 IV. Defamation
The plaintiffs also argue that the summary judgment was improper as to their claim alleging libel per se because, they say, the defendants caused, or participated in, the publication of newspaper accounts of Montgomery's arrest and of the search of Drill Parts' premises and that these accounts, directly or by innuendo, falsely accused the plaintiffs of stealing engineering drawings from Joy.
 "The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."
McCaig v. Talladega Publishing Co., 544 So.2d 875, 877 (Ala. 1989) (citing Restatement (Second) of Torts § 558 (1977)). "Truth is an absolute defense to defamation." Liberty LoanCorp. of Gadsden v. Mizell, 410 So.2d 45, 49 (Ala. 1982). When reviewing a defamation issue, we are constrained by First Amendment considerations. McCaig, 544 So.2d at 877.
"Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel [if it] . . . charges an offense punishable by indictment or . . . tends to bring an individual into public hatred, contempt or ridicule or charges an act odious and disgraceful in society." McGraw v. Thomason, 265 Ala. 635, 639,93 So.2d 741, 744 (1957). This Court has held that falsely imputing the commission of a larceny to an individual is defamatory per se. Nelson v. Lapeyrouse Grain Corp.,534 So.2d 1085, 1091 (Ala. 1988).
 "When a defamatory publication is actionable per se, the law infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages. Thus, [the plaintiff does not have to prove] 'actual harm to reputation or any other damage' in order to recover nominal or compensatory damages."
Id. at 1092 (quoting W. Prosser and W. Keeton, The Law ofTorts, § 112 (5th ed. 1984)).
The test to be applied in determining whether a newspaper article makes a defamatory imputation is whether an ordinary reader or a reader of average intelligence, reading the article as a whole, would ascribe a defamatory meaning to the language.Loveless v. Graddick, 295 Ala. 142, 148, 325 So.2d 137, 142
(1975). The question of "[w]hether the communication is reasonably capable of a defamatory *Page 1290 
meaning is a question, in the first instance, for the court," and "if the communication is not reasonably capable of a defamatory meaning, there is no issue of fact, and summary judgment is proper." Harris v. School Annual Publishing Co.,466 So.2d 963, 964-65 (Ala. 1985).
Initially, the plaintiffs claimed that several newspaper articles describing Montgomery's arrest and the officers' search of Drill Parts' premises were defamatory per se. On appeal, the plaintiffs limit their allegations to four articles. The first article was published by the BirminghamNews on October 20, 1982. It was written by Nancy Campbell, a newspaper reporter who was present in room 210 of the Airport Holiday Inn when Montgomery was arrested. It stated that Blass investigated Montgomery because of information "that patented blue prints had been stolen from" Joy. If quoted Blass as saying that "other companies apparently have been producing machinery from the stolen plans." Finally, it stated that "[a] Joy representative later identified most of the plans" confiscated from Montgomery and Drill Parts as belonging to Joy.
The second article was published by the BirminghamPost-Herald on October 21, 1982. It described the nature of the Leviticus Project and Montgomery's arrest. The third was published by the Birmingham News on November 5, 1982; essentially, it was a follow-up to the October 20, 1982, article. The fourth was published by the Birmingham News on January 30, 1983; it corrected a January 12, 1983, article because the January 12 article had stated that evidence against Montgomery had been presented to a grand jury when, in fact, it had not.
When the trial court entered the summary judgment for the defendants as to the defamation claim, it specifically referred only to the October 20, 1982, article in the Birmingham News, stating that that article was "substantially correct" and that the plaintiffs had not presented any evidence to the contrary. We infer from the trial court's order that it also concluded that the other articles were substantially correct. Because we conclude that a jury, when reading these articles in their entirety, could not find that they conveyed a false meaning, we affirm the summary judgment as to the plaintiffs' defamation claim.
 V. Conspiracy
"A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means."Nelson v. University of Alabama System, 594 So.2d 632, 634
(Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 62,121 L.Ed.2d 30 (1992). Conspiracy is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action. Allied Supply Co. v.Brown, 585 So.2d 33, 36 (Ala. 1991). Because we have concluded that the plaintiffs have no viable claims against the defendants to support a conspiracy claim, we affirm the summary judgment as to the plaintiffs' conspiracy claim as well.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Joy sued Drill Parts and Montgomery for an injunction and damages, alleging misappropriation of trade secrets. Jefferson Circuit Court, No. 82-504-850. Judge William Thompson granted Joy a preliminary injunction in that case. On appeal, this Court affirmed the injunction. Drill Parts I, 439 So.2d at 43. Joy then moved for a summary judgment on its damages claims. On August 20, 1991, Judge Marvin Cherner entered a partial summary judgment against Drill Parts and Montgomery, and he set a nonjury hearing to determine damages. Drill Parts and Montgomery petitioned for a writ of mandamus ordering that the summary judgment be set aside. This Court denied the writ on the ground that Drill Parts and Montgomery could appeal the final judgment. Ex Parte Drill Parts Service Co., Inc.,590 So.2d 252 (Ala. 1991). Some aspects of that case are still pending in the trial court.