Valoris HAMILTON, et al., Plaintiffs,

v.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA, Paul J. Sousa, Sally Johnson, Gertrude N. Baker, Jimmy Knight, Charles Jordan, John Holland, David Thomas, Hazel Fornier, and Jeanne Andrews, Defendants.

Civil Action No. 93–0997–CB–S.

United States District Court,
S.D. Alabama,
Southern Division.

June 19, 1996.

Stephen M. Tunstall, Mobile, AL, Jim Sears, Mobile, AL, for Plaintiffs.

Robert C. Campbell, III, Mobile, AL, Steven L. Terry, Sintz, Campbell, Duke & Taylor, Mobile, AL, Mark S. Boardman, Edward M. Weed, Boardman & Tyra, P.C., Birmingham, AL, for Defendants.

### OPINION AND ORDER

BUTLER, Chief Judge.

This matter is before the Court on motions for summary judgment filed by defendants Board of School Commissioners of Mobile County and Paul Sousa (doc. # 67) and by defendants Sally Johnson, Gertrude Baker and Jimmy Knight (doc. # 71). After careful consideration of the issues presented and the applicable law, the Court enters the following findings of fact and conclusions of law.

### Findings of Fact

John Doe, whose date of birth is August 14, 1984, is a child who is mentally retarded and is eligible to receive special education and related services from the Mobile County Public School System. Valoris Hamilton is the mother of John Doe.

Defendant Paul Sousa is the Superintendent of Education for defendant Board of School Commissioners of Mobile County ("the Board") which is responsible for the

Mobile County School System ("School System"). Defendant Sally Johnson is employed by the Board as the coordinator of Special Education. Defendant Gertrude N. Baker is the principal of Holloway Elementary School, which is part of the Mobile County School System. Defendant Jimmy Knight is an Assistant Superintendent of Education employed by the Board and is responsible for overseeing student services, including special education. Defendants Hazel Fornier, Jeanne Andrews, Charles Jordan, John Holland, and David Thomas are elected members of the Board.

John Doe is enrolled in the Mobile County Public School System which receives federal funds. In July of 1992, Mrs. Hamilton applied with the School System to have John Doe transferred from Whistler Elementary (which was the school within the district where Mrs. Hamilton and John Doe resided) to Holloway Elementary. Mrs. Holloway applied for the transfer at the recommendation of a counselor at the LeMoyne Center[1] where John Doe was also receiving instruction. The instructor believed that Doe would benefit from satellite classes offered by the LeMoyne Center at Holloway.

The transfer form filled out by Mrs. Hamilton permitted two types of transfer "majority to minority" and "extreme hardship". Mrs. Hamilton indicated that her request was based on "extreme hardship" and explained the reason for her request was that a transfer would be in the best interest of her child because Holloway had a LeMoyne satellite program. This transfer was approved on August 18, 1992, for the 1992–93 school year. The letter granting the transfer indicated that it applied only to the 1992–93 year and that it was dependent upon the student's satisfactory attendance and discipline and upon space availability.

On March 15, 1993, Holloway principal Gertrude Baker requested that John Doe's transfer be revoked due to poor attendance, discipline problems and overcrowded classrooms. In a letter dated March 22, Knight informed Mrs. Hamilton and her husband

1. Based on the briefs and evidence presented, it does not appear that the LeMoyne Center is a part of the School System although it offered satellite classes on at least one school campus.

that the Doe's transfer to Holloway was revoked for failing to comply with the transfer requirements which include satisfactory attendance and discipline. The letter specifically states that Doe may attend the school that serves the residence of the parents. On April 1, 1993, Principal Baker wrote Mrs. Hamilton reminding her that Doe's transfer revocation would become effective on April 2, 1993.

After receiving these letters, Mrs. Hamilton began taking action to prevent the transfer revocation. She wrote a complaint letter to the United States Department of Education, Office of Civil Rights in Atlanta. She also wrote a letter to Mrs. Baker requesting that Doe "stay put," *i.e.*, remain at Holloway, during the resolution of this matter. Because Mrs. Hamilton was under the impression that her "stay put" request would allow Doe to stay at Holloway until the dispute was resolved, she returned him to Holloway when school resumed after spring break. Doe attended school as usual for a few days. Then, on April 12, either Principal Baker or her secretary contacted Mrs. Hamilton and informed her that John Doe was being sent home in a taxi cab because he was no longer enrolled at Holloway. According to Mrs. Hamilton, Doe did not arrive home until an hour later.

Within a day or two, Mrs. Hamilton met with Assistant Superintendent Knight but nothing was resolved. Knight told her to keep Doe home until she heard from him regarding where to send him. According to Mrs. Hamilton, she subsequently received separate letters from Knight and Baker, each telling her to send Doe to a different school. One stated Doe was to attend Whistler while the other stated he was to attend W.D. Robbins. Mrs. Hamilton made no inquiries about where to send him but, instead, chose to keep Doe home in hopes that he could return to Holloway.[2]

On April 21, 1993, Mrs. Hamilton was informed by the School System that a juvenile petition was being filed regarding John Doe due to his failure to enroll in and failure to attend school. On May 14, 1993, Mrs. Hamilton was charged with contributing to the delinquency of a minor due to Doe's non-attendance.

On or about May 17, Mrs. Hamilton and the School System reached an agreement through the OCR's Early Complaint Resolution procedure wherein the transfer revocation was rescinded and John Doe was permitted to return to Holloway.

On August 24, 1993, Knight notified Mrs. Hamilton by letter that John Doe should be enrolled in Whistler Elementary for the 1993–94 school year. Mrs. Hamilton had not filled out a request for transfer for John Doe for that school year. On September 13, 1993, Mr. and Mrs. Hamilton, through their attorney, filed a request with the Alabama State Department of Education for an administrative due process hearing before an impartial hearing officer. In their letter, the Hamiltons alleged, among other things, that John Doe had been deprived of appropriate educational evaluation and placement and of an appropriate individual education plan.

On October 13, before a hearing could be conducted, the Hamiltons and the School System entered into a settlement agreement wherein the parties agreed that John Doe would be allowed to return to Holloway. Doe was also to be provided compensatory education for the time missed during the 1992–93 school year. In addition, the parties agreed that the School System would request the dismissal of the charges against Doe and Hamilton arising from the Doe's failure to enroll or attend school in April and May of 1993. Finally, the parties agreed that the School System would immediately formulate and institute an individual educational plan ("IEP") for John Doe.

---

2. Plaintiffs rather disingenuously argue that Knight did not tell Mrs. Hamilton where to send John Doe until May 17, 1993. In support of this proposition, plaintiffs cite Knight's deposition testimony wherein he was asked whether anyone had informed Mrs. Hamilton prior to filing juvenile and criminal proceedings whether Doe could

return to Holloway. Knight depo. pp. 75–76. Plaintiffs note that the letter from Knight allowing Doe to return to Holloway was written on May 17. However, plaintiffs conveniently ignore Knight's letter of April 15, informing Mrs. Hamilton to enroll Doe at Whistler, a letter Mrs. Hamilton admits receiving. School Bd.'s Ex. I.

Pursuant to the agreement, John Doe was re-enrolled in Holloway. The charges against Doe and Hamilton were dismissed. It appears that attempts to schedule a meeting of all interested parties regarding Doe's IEP following the settlement were unsuccessful due to the scheduling conflicts of the Hamilton's attorney.

After he returned to Holloway in the Fall of 1993, John Doe received nineteen discipline referrals. On December 10, 1993, plaintiffs filed the instant action, without again requesting an administrative due process hearing. On December 17, 1993, Doe brought a toy gun to school and, according to his teacher, threatened another child with it. As a result, Doe was suspended from Holloway for a period of three days. According to Mrs. Hamilton, Doe had received the gun has a Christmas gift from another student and was, upon her instruction, returning it to the person who gave it to him. Shortly thereafter, Knight informed Mrs. Hamilton that John Doe would not be allowed to return to Holloway due to excessive discipline referrals.

## CONCLUSIONS OF LAW

### Issues Presented

The Court cannot address the legal issues without first pointing out the difficulties it has faced in identifying those issues. In their complaint, plaintiffs have set forth pages of factual allegations in support of their claims. These factual allegations are followed by a laundry list of federal statutes and state laws which defendants have allegedly violated. The difficulty is that there is no explanation of the correlation between the facts and the legal violations alleged, nor is there any explanation as to which claims apply to which defendants.[3] In other words, the Court is left to guess as to which facts support which claims and to assume that all claims relate to all defendants.[4]

The "Triable Issues" section of the original Pretrial Order did little to clarify plaintiffs' claims. Consequently, the parties were required to resubmit that section. Although the Amended Pretrial Order does narrow the legal issues, it does not set forth the specific facts or law giving rise to each cause of action. Based on the Pretrial Order, the motions for summary judgment and plaintiffs' response thereto, it appears that plaintiffs' primary claims are: (1) that John Doe was deprived of free appropriate education due to the lack of, or inappropriate, evaluation, programming and placement and that such deprivation was the result of his disability; (2) that Doe was deprived of an equal educational opportunity because of his disability in violation of the Fourteenth Amendment's due process and equal protection clauses; (3) that the defendants retaliated against John Doe for asserting his due process rights, (4) that defendants' actions amounted to malicious prosecution (in violation of state law); and (5) that defendants committed the tort of outrage (in violation of state law).[5] Although plaintiffs have not de-

---

**3.** Although plaintiffs have filed an "Amendment to the Complaint," that amendment fails to clarify plaintiffs' claims. Instead, the Amendment simply employs legal phraseology which often accompanies civil rights claims. For example, almost every paragraph alleges either the defendants acted pursuant to a "custom and/or policy" or that the defendants "conspired."

**4.** This is a textbook example of shotgun pleading. Such a complaint violates Fed.R.Civ.P. 10(b) which requires that claims be set forth in separately numbered paragraphs, that each paragraph be limited to a statement of a single set of circumstances and that claims founded upon separate transactions or occurrences be stated in separate counts. See Anderson v. District Bd. of Trustees of Central Florida Community College, 77 F.3d 364 (11th Cir.1996). When, as here, plaintiffs fail to adhere to that duty, it is incum-

bent upon the defendants to move for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Id.

**5.** Plaintiffs have also asserted defendant's failure to comply with the settlement agreement as a triable issue. The Court fails to see how such action in itself amounts to a violation of any of the state or federal laws at issue in this case. Plaintiffs also allege as a triable issue whether defendants placed individuals in administrative and supervisory positions who did not have the requisite knowledge or training regarding special education laws. Again, as far as the Court is aware, none of the laws at issue provide a cause of action for inadequate training of personnel. Thus, the Court finds that these triable issues do not state a claim which would entitle plaintiffs to relief.

lineated the specific statutory basis for the first three claims, they have generally asserted federal claims arising under Individuals with Disability Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.*, and 42 U.S.C. § 1983 and have also asserted a state law claim under the Alabama Exceptional Child Education Act ("AECEA"), *Ala.Code* §§ 16–39–1, *et seq.* (1975).[6]

Based on the motions for summary judgment and plaintiffs' responses thereto, the Court has gleaned enough information to conclude that exhaustion of administrative remedies is required before plaintiffs can pursue claims which are cognizable both under IDEA and other federal statutes. Since plaintiff has failed to exhaust her administrative remedies as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 or to demonstrate why exhaustion should not be required, defendants are entitled to summary judgment on these claims. Furthermore, defendants are also entitled to judgment as a matter of law as to those claims for which exhaustion is not required because plaintiffs have failed to present sufficient evidence to support those claims.

### Summary Judgment Analysis

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of [his] case with respect to which she has the burden of

proof,' the moving party is entitled to summary judgment." 941 F.2d 1428 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met [his] burden, the court must not weigh the evidence or make credibility determinations and must draw all inferences in favor of the nonmoving party." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992), *cert. denied,* 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993).

### IDEA Preemption of Other Federal Claims

■ Defendants argue that IDEA is the exclusive remedy for claims by the disabled based on the denial of a free appropriate public education. Thus, according to defendants, plaintiffs have no right of action under 42 U.S.C. § 1983 or § 1985, the ADA or the Rehabilitation Act. Defendants base this argument on *Ft. Zumwalt School District v. Missouri State Bd. of Education,* 865 F.Supp. 604 (E.D.Mo.1994). The *Ft. Zumwalt* opinion, in turn, relies upon a United States Supreme Court case, *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which has long since been superseded by statute.

In 1986, Congress amended the IDEA by adding § 1415(f) which specifically states that remedies under the Rehabilitation Act, the constitution and other federal statutes remain available notwithstanding the remedies provided by IDEA. *See* Handicapped Children's Protection Act of 1986, P.L. 99–372 § 3, 100 Stat. 796 (1986); *see also Pihl v. Massachusetts Dept. of Education,* 9 F.3d 184, 190 n. 9 (1st Cir.1993); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 751 (2nd Cir.1987). Since the *Ft. Zumwalt* court did not discuss the superseding amendment to the statute, the Court can only assume that it was unaware of the amendment. Based on the plain language of the statute, the Court finds that IDEA does not preempt other federal statutory or constitutional causes of action.

---

6. Originally, plaintiffs also asserted a claim under 42 U.S.C. § 1985, but in their responses to defendants summary judgment motions plaintiffs

have agreed that this claim is due to be dismissed.

*IDEA's Exhaustion Requirement*

The purpose of the Individuals with Disability Education Act, 20 U.S.C. §§ 1401 *et seq.*, ("IDEA") is to "provide[ ] public school districts with federal funding for the education of handicapped children so long as the '[s]tate has in effect a policy that assures all handicapped children the right to a free appropriate public education[.]'" *Association for Retarded Citizens of Alabama v. Teague*, 830 F.2d 158, 159 (11th Cir.1987). To that end, IDEA (formerly known as the Education for All Handicapped Children Act or "EHA") sets forth mandates for special education and related services and establishes certain procedural safeguards, including the requirement that parents be given the opportunity to contest any matter concerning the provision of a free appropriate public education. *Id.* at 160. The state must provide an impartial due process hearing to an aggrieved parent. 20 U.S.C. § 1415(b)(2). Only after this administrative review process is completed, may the parent, or the state, file an action in federal district court. 20 U.S.C. § 1415(e).

This exhaustion of administrative remedies requirement applies not only to claims brought under the IDEA but also to claims brought under "the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth" if those constitutional and statutory provisions are used as remedies to enforce IDEA educational rights. 20 U.S.C. § 1415(f); *see also Association for Community Living v. Romer*, 992 F.2d 1040, 1043–44 (10th Cir.1993); *Mrs. W.*, 832 F.2d at 751; *Waterman ex rel. Waterman v. Marquette–Alger Intermediate School Dist.*, 739 F.Supp. 361, 365 (W.D.Mich.1990). In *Teague*, the Eleventh Circuit recognized that the exhaustion requirement serves a number of important purposes, such as:

(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established

by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Teague*, 830 F.2d at 160.

■ The exhaustion requirement is not, however, without exception. *Id.* Exhaustion is not required where resort to the administrative process would be futile or inadequate or where the question presented is purely a legal one. *Komninos v. Upper Saddle River Bd. of Education*, 13 F.3d 775, 778 (3d Cir. 1994) (also recognizing additional exception where exhaustion would cause severe and irreparable harm to the litigant); *Pihl*, 9 F.3d at 190 (1st Cir.1993); *Teague*, 830 F.2d at 160–61. The plaintiffs bear the burden of demonstrating that their claims fall into one of the exceptions to the exhaustion requirement. *See Gardner v. School Bd. Caddo Parish*, 958 F.2d 108, 110 (5th Cir.1992) (plaintiff bears burden of proving that exhaustion would be futile).

■ Plaintiffs argue that they have exhausted their administrative remedies because they dismissed their request for a due process hearing pursuant to a stipulation of settlement with the School Board. Plaintiffs rely on *Woods ex rel. T.W. v. New Jersey Dept. of Education*, 796 F.Supp. 767 (D.N.J. 1992), in support of their contention that a settlement agreement is tantamount to exhaustion. In *Woods* the parties reached a settlement several days into the due process hearing before an administrative law judge. In approving the settlement, the ALJ stated on the record that the decision was final and appealable to the United States District Court. The instant case is readily distinguishable from *Woods*. The settlement in this case occurred before the due process hearing was ever begun, and there was no stipulation that the settlement amounted to an appealable decision.

Moreover, to consider settlement tantamount to exhaustion would undermine the purposes of the exhaustion requirement. This case is the perfect illustration of the problems created when a plaintiff circumvents the administrative review process. The crux of the problem in this case is a basic disagreement over whether John Doe's

right to a free appropriate public education requires that he be allowed to attend school at Holloway. Unquestionably, attendance at Holloway has never been made a part of his individual education plant ("IEP"). Plaintiffs argue that defendants have denied John Doe's right to a free appropriate public education by failing to develop an appropriate IEP. Defendants, on the other hand, argue that they have developed an IEP in conformance with the law and that they have acted properly in revoking Doe's transfer to Holloway, notwithstanding his disability.

These are certainly issues best resolved by the expertise of someone familiar with the educational needs of the disabled and with the resources best suited to meet those needs. Furthermore, there would be no logic in allowing a case where settlement had been reached prior to administrative review to circumvent exhaustion, while requiring exhaustion in other cases. There is nothing inherent in a settlement agreement that might fulfill the purposes otherwise satisfied by administrative review. Failure to require exhaustion would also encourage parties to circumvent administrative review by entering into, then disregarding, settlement agreements in order to go directly to federal court. Finally, holding that settlement is equivalent to exhaustion would prevent school systems and education departments from correcting their own errors without interference from the courts.

Plaintiffs attempt to assert that this case falls within an exception to the exhaustion requirement, although their argument on this point is much like their complaint—a shotgun approach. Plaintiffs have devoted pages of discussion to cases where exhaustion was not required for a myriad of reasons. The cases generally fall within the exhaustion exceptions noted above. For the most part, however, plaintiffs have failed to demonstrate how those cases are applicable here.

Instead, plaintiffs state simply that exhaustion would be futile because the following allegations are beyond the jurisdiction of an impartial due process hearing officer: (1) that Defendants acted in a retaliatory manner; (2) that they sent John Doe, who was then eight years old home in a taxi without

supervision; (3) that they entered into a conspiracy to deprive John Doe of a free appropriate public education; (4) that defendants conduct amounted to intentional or reckless infliction of severe emotional distress; and (5) that defendants' conduct leading to charges against Mrs. Hamilton and John Doe based on his failure to attend or enroll in school during the Spring of 1993 amounted to abuse of process.

There is no need to speculate whether an allegation of retaliatory conduct is beyond the purview of the hearing officer. Plaintiffs have not identified the conduct which they contend amounted to retaliation. Having failed to do so, they have failed to meet their burden on summary judgment on this issue. Plaintiff's allegation that John Doe was sent home in a taxi cab is not only outside jurisdiction of the hearing officer, but it is also outside the jurisdiction of the Court. Plaintiffs have failed to inform the Court of what federal law such conduct might violate.

Plaintiffs' assertions of a conspiracy do not amount to proof that exhaustion is futile for two reasons. First, plaintiffs reliance on the conspiracy claim is quite illusory since plaintiffs (elsewhere in the same brief) also agree that the conspiracy claim is due to be dismissed. Second, even if conspiracy were a viable theory, the conspiracy alleged is one to deny John Doe educational benefits. Since these educational benefits are also the subject of plaintiffs IDEA claim, the conspiracy claim would also be subject to the IDEA exhaustion requirements. *See, e.g., Association for Community Living v. Romer*, 992 F.2d at 1043–44.

In sum, plaintiffs have failed to establish either that they have satisfied the exhaustion requirement or that their federal claims fall within any exception to exhaustion. Although plaintiffs argue that they have asserted federal claims for which no remedy is available under IDEA, those claims cited by plaintiff have either no factual basis or no legal basis.

■ Finally, plaintiffs are correct in their assertion that their state law claims for outrage and abuse of process are not subject to the exhaustion requirement. By its terms,

that requirement applies only to claims under the laws and constitution of the United States. *See* 20 U.S.C. § 1415(f). It does not apply to state laws. However, as discussed below, those claims do not survive summary judgment on the merits.

### State Law Claims

Plaintiffs have asserted three state law claims: (1) violation of the Alabama Exceptional Child Education Act ("AECEA"), (2) outrage and (3) abuse of process. Defendants assert that no private right of action exists under the AECEA and that the facts fail to support plaintiffs' outrage and abuse of process claims. After reviewing the facts and the applicable law, the Court agrees with defendants' assessment with respect to the claims for outrage and abuse of process. However, because the determination of whether an implied private right of action exists under AECEA is best left to state courts, the Court declines to exercise supplemental jurisdiction over this claim.

A federal district court may decline to exercise supplemental jurisdiction over any state law claim that "raises a novel or complex issue of State law." 28 U.S.C. § 1367. Without doubt, whether a plaintiff may assert a private cause of action under a state statute which creates no express right of action is a novel question of state law. Not only has no Alabama state court decided whether the AECEA creates a private right of action, there are few Alabama decisions addressing generally when a private right of action may be inferred from a statute which is otherwise silent as to its enforcement. *See Allen Trucking Co., Inc. v. Blakely Peanut Co.,* 340 So.2d 452, 454 (Ala.Civ.App.1976) (deciding whether statute created implied right of action for negligence per se "can only be answered with a court construction of the purpose and intent of the statute"); *C.B. v. Bobo,* 659 So.2d 98 (Ala.1995) (relying on legislative intent and case law from other states to find no implied right of action under Alabama Child Abuse Reporting Act). Under these circumstances, whether the AECEA provides a remedy for plaintiffs is a question best left to the state courts. *See Campbell v. Talladega County Bd. of Edu-*

*cation,* 518 F.Supp. 47, 48 n. 1 (N.D.Ala.1981) (declining to exercise pendent jurisdiction over AECEA claim).

In their abuse of process claim, plaintiffs allege that the defendants "maliciously and without probable cause, therefore [sic], filed a petition with the juvenile court of Mobile County ..." against the plaintiffs. Compl. ¶¶ 22 & 30. The elements of a cause of action for abuse of process under Alabama law are: (1) malice, (2) the existence of an ulterior purpose and (3) wrongful use of process. *Triple J Cattle, Inc. v. Chambers,* 621 So.2d 1221, 1223 (Ala.1993). Lack of probable cause is not an element. *Drill Parts & Serv. Co. v. Joy Mfg. Co.,* 619 So.2d 1280 (Ala.1993). In responding to the motion for summary judgment as to this claim, plaintiff sets out a litany of facts without ever setting forth the elements of a cause of action for abuse of process, much less explaining how these facts satisfy those elements. These facts, when, viewed most favorably to plaintiffs reveal that there initially was confusion regarding where John Doe should attend school until the first complaint regarding the transfer revocation was resolved, that Assistant Superintendent Knight told Mrs. Hamilton to keep John Doe home until he notified her where to send the child, and that he did, in fact, send her a letter shortly thereafter instructing her to send her John Doe to Whistler.

Plaintiffs place much emphasis on the fact that Mrs. Hamilton also received a letter from Principal Baker which stated that John Doe should attend W.D. Robbins Elementary. The issue, however, is not Mrs. Hamilton's state of mind, but that of the person or persons who allegedly committed the abuse of process. Since Knight appears to be the only individual defendant who was actually involved in referring the matter of non-attendance for investigation, the issue is whether he acted with malice, for a wrongful purpose and with an ulterior motive. There is no evidence that he knew of Mrs. Hamilton's confusion regarding where to send John Doe during this period. No reasonable jury could infer from these facts that Knight acted with malice, that process was used for a wrongful purpose or that Knight had any

ulterior motive for reporting John Doe's absences pursuant to the Alabama's compulsory attendance law.[7]

▮▮▮ Finally, the facts of this case do not establish a cause of action for the tort of outrage. The tort of outrage, or intentional infliction or emotional distress, prohibits "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civil society." *American Road Service Co. v. Inmon,* 394 So.2d 361, 365 (Ala.1980). The elements of a claim for outrage are: (1) intentional or reckless conduct; (2) which is extreme or outrageous; and (3) causes emotional distress so severe that no reasonable person could be expected to endure it. *Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041 (Ala.1993). The tort of outrage is a very limited cause of action that is available only in the most egregious of circumstances and has been applied only in the following types of cases: (1) wrongful conduct with respect to burials; (2) cases where insurance agents "employed heavy-handed, barbaric tactics" to coerce settlement of an insurance claim; (3) cases involving egregious sexual harassment. *Id.* at 1044.

In support of their outrage claim, plaintiffs cite virtually everything that took place between plaintiffs and the School System from March 1993 through December 1993, including sending John Doe home from school in a taxi cab, filing charges against John Doe and Mrs. Hamilton as a result of the child's nonattendance, failing to schedule IEP meetings, suspending Doe as a result of the toy gun incident and revoking John Doe's transfer. None these incidents individually, nor as a whole, amount to the type of conduct that "goes beyond all possible bounds of decen-

cy."[8] Furthermore, much of the conduct complained of results from a legitimate dispute between plaintiffs and defendants over the appropriate educational placement for John Doe.

Not only have plaintiffs failed to persuade the Court that defendants' conduct was extreme or outrageous, plaintiffs have also failed to meet the third element of outrage. That is, plaintiffs have pointed to no evidence regarding emotional distress. *See id.* at 1045–46 (upholding summary judgment on outrage claim based on plaintiffs failure to prove severe emotional distress).

### Conclusion

This is not an action ripe for federal court review. To avoid this stumblingblock, plaintiffs have attempted to assert numerous nonexistent and factually unsupported claims. Those claims which may have a basis both in law and fact arise from the educational evaluation, placement and program for John Doe. In the Individuals with Disability Education Act, Congress has provided an administrative review mechanism which must be exhausted prior to filing any federal claim arising from such a dispute. Because plaintiffs have failed to exhaust those remedies, their federal claims in this regard are due to be dismissed.[9] Defendants' are entitled to judgment as a matter of law as to any federal claims which do not arise from the educational evaluation and placement of John Doe due to plaintiffs' failure to point facts which would support such claims.

Defendants are also entitled to summary judgment on the merits of plaintiffs' state law claims for the tort of outrage and abuse of process. Finally, because the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claim under the

---

7. Alabama law requires that every child between the ages of seven and sixteen attend school. *Ala. Code* § 16–28–3 (1975). A parent may be found guilty of a misdemeanor for his or her failure to send a child of compulsory attendance age to school. *Id.* § 16–28–12. The local board of education and the juvenile court system are responsible for enforcing this law. *Id.* § 16–28–2.1 (1991).

8. Granted, sending a mentally retarded child home in a taxi cab may not be the best exercise

of judgment, but it is not so extreme or outrageous as to rise to the level of actionable conduct.

9. In addition, the Court notes that plaintiffs have agreed that defendants are entitled to summary judgment on plaintiffs' § 1985 claim and that the individual defendants are entitled to summary judgment as to plaintiff's Americans with Disabilities Act claim.

AECEA, that claim is dismissed without prejudice.

In accordance with the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that defendants' motions for summary judgment be and hereby are **GRANTED.** Judgment shall be entered by separate order.

### FINAL JUDGMENT

Pursuant to separate order on defendants' motions for summary judgment entered this date, it is hereby **ORDERED, ADJUDGED and DECREED** that plaintiffs' claims under the Individuals with Disabilities Education Act, § 504 of the Rehabilitation Act of, the Americans with Disabilities Act and 42 U.S.C. § 1983 arising from the educational evaluation and placement of John Doe be and hereby are **DISMISSED,** without prejudice, based on plaintiffs' failure to exhaust administrative remedies.

It is **FURTHER ORDERED, ADJUDGED and DECREED** that judgment be entered in favor of the defendants both as to any federal law claims other than those stated above and as to plaintiffs' state law claims for abuse of process and outrage and that plaintiffs recover nothing.

It is **FURTHER ORDERED, ADJUDGED and DECREED** that plaintiffs' claim under the Alabama Exceptional Children Education Act be and hereby is **DISMISSED,** without prejudice.